1  JACOB M. HARPER (State Bar No. 259463)
     jacobharper@dwt.com
2  JAMES H. MOON (State Bar No. 268215)
     jamesmoon@dwt.com
3  MICHAEL S. DRELL (State Bar No. 327127)
     michaeldrell@dwt.com
4  DAVIS WRIGHT TREMAINE LLP
   350 South Grand Avenue, 27th Floor
5  Los Angeles, California 90071
   Telephone: (213) 633-6800
6  Fax: (213) 633-6899

7  *Attorneys for Defendant*
   *The Kroger Co.*

8

9

10                **UNITED STATES DISTRICT COURT**

11               **CENTRAL DISTRICT OF CALIFORNIA**

12                    **WESTERN DIVISION**

13

| | |
|---|---|
| 14  MARY TOMASSIAN, individually and on behalf of all others similarly situated, | Case No. 2:25-cv-05608-JFW-PVC |
| 15                          Plaintiff, | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT THE KROGER CO.'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT** |
| 16 | |
| 17      vs. | |
| 18  THE KROGER CO., | |
| 19                          Defendant. | *[Notice of Motion and Motion; Declaration of Jacob M. Harper; Request for Judicial Notice; and Proposed Order Filed Concurrently]* |
| 20 | |
| 21 | |
| 22 | Date:       November 3, 2025 |
| 23 | Time:       1:30 p.m. Location:   Courtroom 7A |
| 24 | |
| 25 | Assigned to the Hon. John F. Walter Courtroom 7A |
| 26 | |
| 27 | Complaint Filed:  June 20, 2025 |
| 28 | |

_____
KROGER'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

**DAVIS WRIGHT TREMAINE** LLP
350 SOUTH GRAND AVENUE, 27TH FL
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ............................................................................7

II.     FACTUAL ALLEGATIONS ...........................................................9

    A.      Ms. Tomassian Alleges the Rice Contains Heavy Metals. ...................9

    B.      Ms. Tomassian and Her Attorney Sue Various Rice Sellers. ............11

III.    LEGAL STANDARD ....................................................................12

IV.     THE COURT SHOULD DISMISS THE CLAIMS .....................................13

    A.      Ms. Tomassian's Overarching Fraudulent Omission Theory Fails. ....13

        1.      No Unreasonable Safety Hazard. ...............................................15

        2.      No Alternative Basis for a Duty to Disclose. ..........................18

            (a)      The Purported "Defect" Is Not Material. ......................18

            (b)      The Purported "Defect" Is Not Central to Function. ......19

            (c)      None of the *LiMandri* Factors Is Alleged. ....................21

    B.      Ms. Tomassian's Claims Fail for Additional Reasons. ....................23

    C.      Ms. Tomassian Is Not Entitled to the Relief Sought. ........................24

        1.      The Claim for Punitive Damages Should Be Dismissed..........24

        2.      Equitable Relief Is Improper. ...................................................25

        3.      The Nationwide Class Claims Should Be Dismissed..............26

V.      CONCLUSION ............................................................................27

KROGER'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

**DAVIS WRIGHT TREMAINE** LLP
350 SOUTH GRAND AVENUE, 27TH FL
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ahren v. Apple Inc.*,
  411 F. Supp. 3d 541 (N.D. Cal. 2019)..................................................................24

*Barton v. Kimberly-Clark Corp.*,
  2025 WL 486316 (S.D. Cal. Feb. 13, 2025) ................................................18, 24

*Collins v. eMachines, Inc.*,
  202 Cal. App. 4th 249 (2011)........................................................................14, 18

*Cortez v. Handi-Craft Co., Inc.*,
  2025 WL 1452561 (N.D. Cal. Apr. 29, 2025)..............................................*passim*

*Czuchaj v. Conair Corp.*,
  2014 WL 1664235 (S.D. Cal. April 18, 2014)....................................................22

*Daugherty v. Am. Honda Motor Co.*,
  144 Cal. App. 4th 824 (2006)..............................................................................14

*Ebner v. Fresh, Inc.*,
  838 F.3d 958 (9th Cir. 2016)...............................................................................12

*Glenn v. Hyundai Motor Am.*,
  2016 WL 3621280 (C.D. Cal. June 24, 2016)....................................................26

*Grausz v. Hershey Co.*,
  691 F. Supp. 3d 1178 (S.D. Cal. 2023) (*Grausz I*)............................................17

*Grausz v. Hershey Co.*,
  713 F. Supp. 3d 818 (S.D. Cal. 2024) (*Grausz II*) ...........................................17

*Hadley v. Kellogg Sales Co.*,
  243 F. Supp. 3d 1074 (N.D. Cal. Mar. 21, 2017)...............................................12

*Hammerling v. Google*,
  615 F. Supp. 3d 1069 (N.D. Cal. 2022)........................................................14, 16

*Hayden v. Bob's Red Mill Nat. Foods, Inc.*,
  2024 WL 1643696 (N.D. Cal. Apr. 16, 2024)..............................................*passim*

*Hodsdon v. Mars, Inc.*,
  891 F.3d 857 (9th Cir. 2018) ....................................................................14, 20, 24

KROGER'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

**DAVIS WRIGHT TREMAINE** LLP
350 SOUTH GRAND AVENUE, 27TH FL
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

*Iglesias v. Arizona Beverages USA, LLC*,
2023 WL 4053803 (N.D. Cal. June 16, 2023) ..................................................... 26

*In re Pac. Mkt. Int'l, LLC Stanley Tumbler Litig.*,
764 F. Supp. 3d 1026 (W.D. Wash. 2025) .......................................................... 19

*In re Plum Baby Food Litig.*,
2025 WL 1200700 (9th Cir. Apr. 25, 2025)....................................................... 22

*In re Plum Baby Food Litig.*,
2024 WL 1354447 (N.D. Cal. Mar. 28, 2024), *aff'd* 2025 WL 1200700 (9th
Cir. Apr. 25, 2025)......................................................................................*passim*

*In re Theos Dark Chocolate Litig.*,
750 F. Supp. 3d 1069 (N.D. Cal. 2024)........................................................ 16, 20

*In re Trader Joe's Co. Dark Chocolate Litig.*,
726 F. Supp. 3d 1150 (S.D. Cal. Mar. 27, 2024) ......................................... 16, 18

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009)............................................................................ 13

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018)............................................................................. 10

*Kramer v. Wilson Sporting Goods Co.*,
2013 WL 12133670 (C.D. Cal. Dec. 13, 2013) (Walter, J.) ........................ 26, 27

*Krystofiak v. BellRing Brands, Inc.*,
737 F. Supp. 3d 782 (N.D. Cal. 2024)......................................................... 13, 18

*Lassen v. Nissan N. Am., Inc.*,
211 F. Supp. 3d 1267 (C.D. Cal. 2016)............................................................. 19

*Lavie v. Procter & Gamble Co.*,
105 Cal. App. 4th 496 (2003)............................................................................ 12

*Lopez v. Mead Johnson Nutrition Co.*,
2025 WL 895213 (N.D. Cal. Mar. 24, 2025)...............................................*passim*

*Mazza v. Am. Honda Motor Co.*,
666 F.3d 581 (9th Cir. 2012), *overruled on other grounds by Olean
Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651
(9th Cir. 2022) ............................................................................................ 26, 27

*Mencia-Montes v. Fit Foods Distrib., Inc.,*
  2025 WL 1185372 (N.D. Cal. Mar. 31, 2025) ...................................................... 23

*Moore v. Mars Petcare US, Inc.,*
  966 F.3d 1007 (9th Cir. 2020) ............................................................................. 13

*Moore v. Trader Joe's Co.,*
  4 F.4th 874 (9th Cir. 2021) ................................................................................. 12

*Rausch v. Flatout, Inc.,*
  660 F. Supp. 3d 855 (N.D. Cal. 2023) ................................................................ 25

*Rodriguez v. Mondelēz Global LLC,*
  703 F.Supp.3d 1191 (S.D. Cal. 2023) ................................................................ 22

*Route v. Meade,*
  2013 WL 658251 (C.D. Cal. Feb. 21, 2013) ...................................................... 26

*Rozier v. Dep't of Homeland Sec. Fed. Protective Serv.,*
  2022 WL 2199938 (C.D. Cal. Mar. 7, 2022) ..................................................... 25

*Scheibe v. Performance Enhancing Supplements, LLC,*
  2023 WL 3829694 (S.D. Cal. June 5, 2023) ...................................................... 25

*Sonner v. Premier Nutrition Corp.,*
  971 F.3d 834 (9th Cir. 2020) ........................................................................ 25, 26

*Taiwan Semiconductor Mfg. Co., Ltd. v. Tela Innovations, Inc.,*
  2014 WL 3705350 (N.D. Cal. July 24, 2014) .................................................... 25

*Vermillion v. Corr. Corp. of Am.,*
  2008 WL 4058063 (E.D. Cal. Aug. 28, 2008) ................................................... 25

*Vinci v. Hyundai Motor Am.,*
  2018 WL 6136828 (C.D. Cal. Apr. 10, 2018) .................................................... 27

*Williams v. Yamaha Motor Co. Ltd.,*
  851 F.3d 1015 (9th Cir. 2017) ............................................................................ 14

*Wong v. Iovate Health Scis. U.S.A. Inc.,*
  2025 WL 821451 (E.D. Cal. Mar. 14, 2025) ..................................................... 23

KROGER'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

**DAVIS WRIGHT TREMAINE** LLP
350 SOUTH GRAND AVENUE, 27TH FL
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

**Statutes**

California Business and Professions Code
§ 17200, *et seq.* ..............................................................................*passim*
§ 17500, *et seq* ..............................................................................*passim*

California Civil Code
§ 1750, *et seq.* ..............................................................................*passim*
§ 3294(b)..............................................................................25

California Health & Safety Code
§§ 25249.5-25249.14 ......................................................................11
§ 25703(b)..............................................................................11, 17

California Health and Safety Code § 25249.5 ..................................................11, 16

**Rules**

Federal Rule of Civil Procedure
8(a)..............................................................................23
9(b)..............................................................................12, 13, 22, 23

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FL
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

## **MEMORANDUM OF POINTS AND AUTHORITIES**

## **I.    INTRODUCTION**

Plaintiff Mary Tomassian alleges defendant The Kroger Co. (Kroger) failed to disclose that its basmati rice (the Rice) contained trace amounts of heavy metals, naturally occurring components of rice, grains, and myriad other plant foods that have existed inextricably in these foods for the thousands of years humans have cultivated them.  Ignoring that that *de minimis* levels of naturally occurring elements creates any harm, Ms. Tomassian and her counsel filed this putative class action (one among several others[1]) based on unfounded speculation and fearmongering that—in other contexts, amounts, and circumstances not present here—other heavy metals can create risks inapplicable here.

To make these claims, Ms. Tomassian manufactures an omissions-based theory of class liability against Kroger that fails at the start because her First Amended Complaint (FAC) fails to allege a legal duty to disclose.

**Ms. Tomassian's Pure Omission Theory Fails:**  The FAC fails to plead facts demonstrating that any reasonable consumer would be misled by the supposed omissions on the Product packaging.  Ms. Tomassian concedes that the Rice does not include any actual or partial affirmative misrepresentations relating to heavy metals.  Rather, all her claims depend on establishing Kroger had a legal duty to disclose the presence of naturally occurring metals.  That requires pleading either (1) the Rice presents an unreasonable safety hazard, or (2) that the information is material, central to the Rice's function, and was exclusively in Kroger's knowledge or actively concealed by Kroger.  Ms. Tomassian comes nowhere close to pleading either basis for her claims:

---

[1] *E.g.*, *Tomassian v. Better Living Brands, LLC*, Case No. 4:25-cv-5175 (N.D. Cal. June 18, 2025) (same plaintiff and counsel); *Scott v. First Street Food LLC*, Case No. 1:25-cv-0732 (E.D. Cal. June 16, 2025) (same counsel); *Scott v. Riviana Foods, Inc.*, Case No. 1:25-cv-0735 (E.D. Cal. June 17, 2025) (same counsel).

KROGER'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

**DAVIS WRIGHT TREMAINE** LLP
350 SOUTH GRAND AVENUE, 27TH FL
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

**1.** ***No Unreasonable Safety Hazard:*** *First*, the FAC includes *no* allegations that the Rice presents an unreasonable safety hazard.  Instead, Ms. Tomassian cites a hodgepodge of inapplicable threshold levels that say nothing about the Rice's safety and other unpermitted legal theories of harm.  *See Hayden v. Bob's Red Mill Nat. Foods, Inc.*, 2024 WL 1643696, at \*8 (N.D. Cal. Apr. 16, 2024) (no unreasonable safety hazard where no allegation heavy metal in product "pose[d] a health threat *at the levels that it appears in the Products*").  As acknowledged in the literature Ms. Tomassian relies upon, there is no recognized or relevant level at which heavy metals in rice purportedly presents health threat.  The FAC fails to connect the alleged levels of heavy metals in the Rice to any actual or reasonable risk of harm.

**2.** ***No Alternative Basis for a Duty to Disclose:*** *Second*, Ms. Tomassian also fails to—and could not—allege in a non-conclusory manner that any purported omissions are material or central to the function of the Rice, as she identifies no standard indicating any concern for safety, and the Rice still functions more than adequately as nutritious food.  *See Lopez v. Mead Johnson Nutrition Co.*, 2025 WL 895213, at \*8 (N.D. Cal. Mar. 24, 2025) (no allegation product was "incapable of use by any consumer").  Ms. Tomassian similarly fails to adequately allege any one of four additional factors that would mandate some additional disclosure:  Kroger is not Ms. Tomassian's fiduciary and did not make any partial representations.  And, Ms. Tomassian's own cited study makes clear that Kroger did not have exclusive knowledge of facts Ms. Tomassian could not have known given the underlying "omissions" about heavy metals have been known for decades.  *See Hayden*, 2024 WL 1643696, at \*10 ("Plaintiff's allegations concerning Defendant's supposedly exclusive knowledge of cadmium are implausible in light of the publicly accessible nature of ConsumerLab.org's testing.").

**Ms. Tomassian's UCL Claim Fails for Additional Reasons:**  Ms. Tomassian's claims fails for additional, independent reasons.  In particular, the

KROGER'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

UCL claim fails with and for the same reasons as the FAL and CLRA claims, and because she does not allege any unlawful, unfair, or fraudulent conduct.

**Ms. Tomassian's Requests for Relief Fail:**  Ms. Tomassian's various requests for relief fail, as she does not have standing to assert claims under California law on behalf of a nationwide class, her request for punitive damages lacks the necessary allegations of willful and malicious conduct, and her claims for equitable relief must be dismissed as she does not allege that her legal remedies are inadequate.

Kroger respectfully requests the Court dismiss the FAC in full with prejudice.

## II.    FACTUAL ALLEGATIONS

### A.    Ms. Tomassian Alleges the Rice Contains Heavy Metals.

Ms. Tomassian allegedly "purchased the [Rice], from Kroger and Ralph's [sic] stores near Woodland Hills, California," between "approximately 2020" and "March, 2025."  FAC ¶¶ 21–22.  Ms. Tomassian contends that the Rice's label fails to disclose the presence of heavy metals in the Rice.  FAC ¶¶ 23, 32–33.  The image of the Rice's packaging was included in the initial Complaint (Compl. ¶ 39):







KROGER'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

**DAVIS WRIGHT TREMAINE** LLP
350 SOUTH GRAND AVENUE, 27TH FL
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

Ms. Tomassian does not allege she tested the Rice she purchased or any other rice, or that her specific purchase(s) of the Rice contained any heavy metals or caused her harm.  Instead, she bases her claims on a May 14, 2025 report published by Healthy Babies Bright Futures (the Report).  FAC ¶¶ 10–11 & n.1; Request for Judicial Notice (RJN), Ex. 1.[2]  The Report commissioned testing of 145 samples of varying types of rice purchased from retailers nationwide, produced by different manufacturers, and originating from different countries.  Report at 1, 6, 7, 11–12. The Report states that the tests "detected arsenic in 100% of samples" and cadmium "in all but one," though the Report notes that "[t]he individual containers [] tested may not reflect a brand's average heavy metal levels over time."  *Id.* at 1, 6, 16.

Appendix A to the Report claims that the single tested sample of Kroger Basmati Rice, purportedly purchased from Maumelle, Arkansas on an unknown date, contained 81.1 parts per billion of inorganic arsenic and 108 parts per billion of cadmium.  *Id.* at 30; FAC ¶ 11.  The Report acknowledges that heavy metals are "naturally present in soil" (including arsenic, which "is naturally present in water and soil"), "[r]ice plants naturally absorb heavy metals from soil and water, especially arsenic," and "rice absorbs these metals that are naturally present in soil," and that the presence of naturally-occurring heavy metals in rice has been documented for a quarter century.  Report at 1, 10, 12, 19, 21.

The FAC nowhere identifies any legal requirement for a maximum permitted levels of heavy metals in rice, instead referencing, without further explanation, "Maximum Allowable Dose Levels ('MADLs')" for cadmium and "No Significant

---

[2] As explained in the concurrently filed RJN, the Report is incorporated into the FAC by reference and subject to judicial notice, and the Court may properly consider its contents in deciding the present motion.  *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018) (incorporation by reference "prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken – or doom – their claims" (citation omitted)).

Risk Levels ('NSRLs')" for inorganic arsenic, and standards for arsenic in apple juice and drinking water.[3]  FAC ¶¶ 30, 62.  The Report itself notes that "no legal limit exists for heavy metals in rice."  Report at 15.

Based on these allegations, Ms. Tomassian brings claims on behalf of a putative class of nationwide and California consumers, for (1) violation of California's Unfair Competition Law (UCL), Cal. Bus. & Prof. Code § 17200, *et seq*; (2) violation of California's False Advertising Law (FAL), Cal. Bus. & Prof. Code § 17500, *et seq*; (3) violation of California's Consumers Legal Remedies Act (CLRA), Cal. Civ. Code § 1750, *et seq*; (4) Breach of Implied Warranty of Merchantability; and (5) Unjust Enrichment.  *Id.* ¶¶ 114–69.  She seeks injunctive relief, restitution, disgorgement, actual and statutory damages, punitive damages, and attorneys' fees and costs, *inter alia*.  FAC at Prayer.

## B.  Ms. Tomassian and Her Attorney Sue Various Rice Sellers.

Just two days before filing this lawsuit, Ms. Tomassian and her counsel filed suit based on legal theories and facts substantially similar, if not nearly identical, to those alleged here.  *See Tomassian v. Better Living Brands, LLC*, Case No. 4:25-cv-

---

[3] Though the FAC seeks to allege the Rice is unsafe by referencing MADLs and NSRLs, as well as cancer and reproductive harm, Ms. Tomassian does not actually bring a claim under California's Proposition 65, the origin of the referenced MADLs and NSRLs and which requires certain disclosures regarding substances known to the State of California to cause reproductive harm or cancer.  "MADLs establish a limit for certain chemicals above which products containing those chemicals must include a warning label pursuant to California's Safe Drinking Water and Toxic Enforcement Act of 1986."  *Hayden*, 2024 WL 1643696, at *8 (citing Cal. Health & Safey Code § 25249.5).  MADLs mandate warning labels in certain contexts, but these labeling requirements are disconnected from any actual health implications.  *See id.* ("[T]he Court also cannot assume that there *is* [a connection between MADLs and a threshold for unhealthy cadmium exposure] . . . especially where Plaintiff's own sources indicate that '[e]xposure at a level *1,000 times greater than the MADL* is expected to have *no observable effect.*'" (internal citations omitted)).  Similarly, NSRLs are set a level presuming one additional case of cancer per 100,000 individuals, assuming a lifetime of daily exposure at the level in question.  Cal. Health & Safety Code § 25703(b).

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FL
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

5175 (N.D. Cal. June 18, 2025), ECF No. 1.  Ms. Tomassian's counsel also represents another plaintiff, Everett Scott, in two additional suits, filed nearly contemporaneously, against Riviana Foods, Inc. and First Street Food LLC, again alleging facts and legal theories almost, if not entirely, identical to those asserted here. *See Scott v. First Street Food LLC*, Case No. 1:25-cv-0732 (E.D. Cal. June 16, 2025), ECF No. 1; *Scott v. Riviana Foods, Inc.*, Case No. 1:25-cv-0735 (E.D. Cal. June 17, 2025), ECF No. 1.[4]  Each of the complaints generally allege that, based on the Report, each of the accused packaged rice products, based off a single sample of that product, contain trace amounts of heavy metals, including, as relevant here, arsenic and cadmium.

## III.    LEGAL STANDARD

Ms. Tomassian's claims of customer deception must satisfy both (1) the reasonable consumer standard with (2) the specificity required under Rule 9(b).

***Reasonable Consumer:***  The "reasonable consumer test" requires a plaintiff to allege facts showing consumers "are likely to be deceived." *Ebner v. Fresh, Inc., 838 F.3d 958, 965 (9th Cir. 2016).*  "This is not a negligible burden." *Moore v. Trader Joe's Co., 4 F.4th 874, 882 (9th Cir. 2021).*  A plaintiff must plead "more than a mere possibility that [the] label might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner." *Ebner*, 838 F.3d at 965 (quoting *Lavie v. Procter & Gamble Co., 105 Cal. App. 4th 496, 508 (2003)).* "Rather, [it] requires a probability that a significant portion of reasonable consumers, acting reasonably in the circumstances, could be misled." *Id.*

***Rule 9(b):***  "Where Plaintiff has alleged a 'unified course of fraudulent conduct,'" the FAC must also plead up to the heightened requirements of Rule 9(b). *Hadley v. Kellogg Sales Co., 243 F. Supp. 3d 1074, 1094 (N.D. Cal. Mar. 21, 2017)*

---

[4] A case in the Western District of Washington, *Wright v. Amazon.com, Inc.*, Case No. 2:25-cv-0977 (W.D. Wash. May 23, 2025), alleges similar facts and theories based on the same study with different counsel and a different plaintiff.

KROGER'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

**DAVIS WRIGHT TREMAINE** LLP
350 SOUTH GRAND AVENUE, 27TH FL
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

1  (citing *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126–27 (9th Cir. 2009)); *see*

2  *also Cortez v. Handi-Craft Co., Inc.*, 2025 WL 1452561, at *2 (N.D. Cal. Apr. 29,

3  2025) ("Claims based on a theory of fraud . . . must satisfy Rule 9(b)'s heightened

4  pleading standard" (collecting authority)).  Here, the FAC claims that Kroger

5  "intentionally omitted" from the Rice's packaging any mention of heavy metals "in

6  order to induce and mislead" consumers, FAC ¶ 41, thereby alleging "a unified

7  course of fraudulent conduct" and grounding its claims in fraud, which requires that

8  the "entire complaint . . . be pleaded with particularity." *Kearns*, 567 F.3d at 1127.

9  Thus, "[t]he complaint must 'identify the who, what, when, where, and how of the

10  misconduct charged, as well as what is false or misleading about the purportedly

11  fraudulent statement, and why it is false." *Cortez*, 2025 WL 1452561, at *2

12  (quoting *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1019 (9th Cir. 2020)).

### IV.    THE COURT SHOULD DISMISS THE CLAIMS

### A.    Ms. Tomassian's Overarching Fraudulent Omission Theory Fails.

15  Each and every one of Ms. Tomassian's claims—under the UCL, FAL, and

16  CLRA, and for unjust enrichment and violation of the implied warranty of

17  merchantability—rise and fall based on her central premise that Kroger fraudulently

18  omitted information about heavy metals in the Rice.  *See In re Plum Baby Food*

19  *Litig.*, 2024 WL 1354447, at *4, 9 (N.D. Cal. Mar. 28, 2024), *aff'd* 2025 WL

20  1200700 (9th Cir. Apr. 25, 2025) (dismissing UCL, FAL, CLRA, and unjust

21  enrichment claims based on failure to meet reasonable consumer test based on

22  omission theory); *Lopez*, 2025 WL 895213, at *10–11 (implied warranty of

23  merchantability claim fell with UCL, CLRA, and FAL claims for failure to plead

24  duty to disclose); *Hayden*, 2024 WL 1643696, at *10 (dismissing implied warranty

25  claim for same reasons UCL and CLRA claims failed); *Krystofiak v. BellRing*

26  *Brands, Inc.*, 737 F. Supp. 3d 782, 806 (N.D. Cal. 2024) (dismissing unjust

27  enrichment claim for "same reasons" as "the California consumer protection

28  claims" failed).

KROGER'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FL
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

When a plaintiff seeks to establish deception meeting the reasonable consumer standard based on an omission, "the omission must be contrary to a representation actually made by the defendant, or *an omission of a fact the defendant was obliged to disclose.*" *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 861 (9th Cir. 2018) (quoting *Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 835 (2006)). Ms. Tomassian does not allege any affirmative or partial representations by Kroger or the Rice label. Rather, Ms. Tomassian admits that all her claims are based on a pure *omission* theory of liability. ECF No. 21 at 4. All her claims fail because she does not and cannot plausibly allege that Kroger had a legal duty to disclose the presence of naturally occurring metals.

"A 'defendant only has a duty to disclose when either (1) the defect at issue relates to an unreasonable safety hazard or (2) the defect is material, 'central to the product's function,' and the plaintiff alleges one of the four *LiMandri* factors.'" *Lopez*, 2025 WL 895213, at *7 (quoting *Hammerling v. Google,* 615 F. Supp. 3d 1069, 1085 (N.D. Cal. 2022)); *see also Williams v. Yamaha Motor Co. Ltd.*, 851 F.3d 1015, 1029 (9th Cir. 2017) ("We further note that the standard is one of an 'unreasonable' safety risk," not "plausibly hazardous"). The *LiMandri* factors include:

> (1) when the defendant is the plaintiff's fiduciary; (2) when the defendant has exclusive knowledge of material facts not known or reasonably accessible to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations that are misleading because some other material fact has not been disclosed.

*Hodsdon*, 891 F.3d at 862 (quoting *Collins v. eMachines, Inc.*, 202 Cal. App. 4th 249, 255 (2011)).

Ms. Tomassian meets none of these requirements because the FAC (1) is entirely devoid of *any* allegations that the Rice is an unreasonable safety hazard;

KROGER'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

**DAVIS WRIGHT TREMAINE** LLP
350 SOUTH GRAND AVENUE, 27TH FL
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

and (2) fails to establish an alternative basis for a duty to disclose based on a material defect central to the Rice's function and the *LiMandri* factors.

### 1.    No Unreasonable Safety Hazard.

Beyond its speculative theories of harm, the FAC does not include a single non-conclusory allegation that the product is *unreasonably* unsafe as required to establish a duty to disclose the natural phenomenon of trace metals.

The FAC only includes general allegations regarding the levels of heavy metals in the Rice and the effects of heavy metals over time, as well as the bald conclusion that the Rice "was not safe or healthy." *See* FAC ¶¶ 11 (alleging numbers from sole tested sample of in Rice), 30 (referencing, without specifying threshold amounts, MADLs and NSRLs), 34, 45–46 (*potential* effects of heavy metals). ***But the FAC fails to connect the alleged levels of heavy metals in the Rice to any measurable threshold indicative of when actual harm might occur.*** Indeed, the very article Ms. Tomassian bases the entirety of her case on acknowledges that there is no established legal standard for heavy metals in rice. *See* Report at 2, 15, 20, 25 (acknowledging lack of federal or state limit on arsenic or cadmium in rice and that "levels of arsenic and other heavy metal in rice are far lower than those causing acute poisoning," and identifying limits from health "impact(s)" not actual harm).

It is black-letter law that "[i]n cases that involve hazardous substances, courts have required plaintiffs to allege a connection between (1) the levels at which those substances are unsafe, and that (2) the defendant's products contain those unsafe levels." *Cortez*, 2025 WL 1452561, at *4 (collecting cases). Courts routinely hold that allegations of attenuated, non-specific injuries not tied to a *specific* content level associated with actual harm are wholly inadequate to allege an unreasonable safety hazard as they are entirely conjectural. *See id.* (no unreasonable safety hazard where "[t]he Court [wa]s therefore left to guess" "the amount of microplastics that are released by defendant's Products," "the negative health

KROGER'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FL
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

effects risked by that amount, and" "whether that amount is unreasonable."); *In re Theos Dark Chocolate Litig.*, 750 F. Supp. 3d 1069, 1090 (N.D. Cal. 2024) ("Plaintiffs do not plead that the amounts of Heavy Metals that occur *in Theo's Products* have caused harm or create an unreasonable safety hazard" (citing *Hammerling*, 615 F. Supp. 3d at 1086)); *In re Trader Joe's Co. Dark Chocolate Litig.*, 726 F. Supp. 3d 1150, 1170–71 (S.D. Cal. Mar. 27, 2024)[5] ("[T]here is a disconnect in the [complaint] between Plaintiffs' allegations about the potential harms posed by Heavy Metals as a general matter and whether these Heavy Metals are unreasonably hazardous at the particular levels in the specific Products at issue in this case . . . alleging that Heavy Metals can pose human health risks at some unidentified level does not mean the levels in these Products pose a human health risk, particularly not one great enough to constitute an unreasonable safety hazard"); *In re Plum*, 2024 WL 1354447, at *5 ("plaintiffs d[id] not establish that the amount of heavy metals and perchlorate in defendant's Baby Food posed an *unreasonable* safety hazard."), *aff'd In re Plum*, 2025 WL 1200700, at *1.

Ms. Tomassian's attempts to imply that the Rice is dangerous through references to MADLs and NSRLs are inadequate. As discussed above, Prop 65's "MADLs establish a limit for certain chemicals above which products containing those chemicals must include a warning label." *Hayden*, 2024 WL 1643696, at *8 (citing Cal. Health & Safety Code § 25249.5). While MADLs mandate warning labels in certain contexts, because MADLs are set substantially lower than the level at which exposure to a chemical would cause "an observable effect," let alone actual harm, MADLs are not relevant to the inquiry of whether a product is in fact unsafe or an unreasonable safety hazard. *See id.* ("[T]he Court also cannot assume that there *is* [a connection between MADLs and a threshold for unhealthy cadmium exposure] . . . especially where Plaintiff's own sources indicate that '[e]xposure at a

---

[5] Plaintiff's counsel represents a plaintiff in *In re Trader Joe's Company Dark Chocolate Litigation*, Case No. 3:23-cv-0061-RBM-DTF (S.D. Cal.).

level *1,000 times greater than the MADL* is expected to have *no observable effect.*'" (internal citations omitted)).  Likewise, NSRLs are set a level presuming one additional case of cancer per 100,000 individuals, assuming a lifetime of daily exposure at the level in question—and Ms. Tomassian notably does not even allege that the Rice violates this limit, let alone demonstrate how it is relevant.  Cal. Health & Safety Code § 25703(b); FAC ¶ 30 (the Rice "contributes" "approximately 36 percent of the [NSRLs] for inorganic arsenic").

  ***Courts repeatedly find generalized allegations relating to MADLs or other legal thresholds without a* specific connection *to human health impacts indicate a product is an unreasonable safety hazard, are inadequate to establish a legal duty to disclose.*** *See Grausz v. Hershey Co.*, 691 F. Supp. 3d 1178, 1195 (S.D. Cal. 2023) (*Grausz I*) (granting motion to dismiss because "MADLs are not cutoffs indicating the point where lead or cadmium content becomes a health risk"); *Grausz v. Hershey Co.*, 713 F. Supp. 3d 818, 827–28 (S.D. Cal. 2024) (*Grausz II*) (dismissing complaint for failure "to plead 'whether the trace amounts *at issue here* are actually enough to cause the health effects'" (internal citation omitted)); *Hayden*, 2024 WL 1643696, at *8–9 ("Plaintiff has not plausibly alleged that Proposition 65 MADLs 'indicate the thresholds at which a particular substance poses a danger to human health.'" (internal citations omitted)); *Lopez*, 2025 WL 895213, at *7–8 (no unreasonable safety hazard where "Plaintiff has not plausibly alleged that the EPA and FDA's allowable limits 'indicate the thresholds at which [] particular substance[s] pose[] a danger to human health.'" (quoting *Hayden*, 2024 WL 1643696, at *9 and collecting cases)).

  Further, the FAC cannot rely on nonspecific alleged harm from accumulation over time, as this theory is entirely conjectural, *or* on allegations that "no amount" of exposure is safe or permissible to allege that the Rice is an unreasonable safety hazard, which would impossibly expand any duty to disclose.  *See In re Plum*, 2024 WL 1354447, at *5 ("the theory that regular consumption of defendant's Baby Food

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FL
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

over a period of time may lead to potentially dangerous accumulations of these chemicals is simply too conjectural" (citations omitted)); *Cortez*, 2025 WL 1452561, at *5 ("Insofar as plaintiffs suggest that *no amount* of microplastic exposure can be safe, such an expansive theory of harm would impermissibly broaden the duty to disclose to any *potential*—and not just unreasonable—safety hazard." (citations omitted)); *accord Krystofiak*, 737 F. Supp. 3d at 801 ("As an example, using the World Health Organization's declaration that there is no safe lead level as a reference is too conclusory and would render FDA guidance moot in all circumstances, rendering literally *any* alleged level of lead actionable.").

Ms. Tomassian "fails to allege that the [heavy metals] [are] 'unreasonably hazardous at the particular levels in the specific Products'" because she never connects the putative levels of heavy metals in the single sample of the Rice to any threshold level of harm, and she therefore fails to allege that the Rice is a safety hazard. *Barton v. Kimberly-Clark Corp.*, 2025 WL 486316, at *12 (S.D. Cal. Feb. 13, 2025) (quoting *In re Trader Joe's*, 726 F. Supp. 3d at 1170).

### 2.    No Alternative Basis for a Duty to Disclose.

Unable to allege that the Rice (and apparently every other rice product sold in the United States) is a safety hazard due to naturally-occurring elements, Ms. Tomassian can only adequately state a fraudulent omission claim—and thus that Kroger has a duty to disclose—if the putative defect "is material, 'central to the product's function, and the plaintiff alleges one of the four *LiMandri* factors." *In re Plum*, 2024 WL 1354447, at *4. The FAC fails to meet any of these requirements.

### (a)    The Purported "Defect" is Not Material.

"[A] fact is deemed 'material,' . . . if a 'reasonable [consumer]' would deem it important in determining how to act in the transaction at issue." *Collins*, 202 Cal. App. 4th at 256. To show materiality in cases claiming product contamination, much as with alleging an unreasonable safety hazard, a plaintiff must allege a connection between the putative level of contaminants in the product and specific

thresholds indicating that level results in actual harm.  *See Lassen v. Nissan N. Am., Inc.*, 211 F. Supp. 3d 1267, 1285 (C.D. Cal. 2016) ("Where a plaintiff's claim is that the material fact that the seller had a duty [to] disclose is a defect, materiality requires that the defect pose a safety concern.").  Otherwise, *any* food product could be subject to a claim given, as the Report acknowledges, that Heavy Metals are *naturally occurring* in soil and *naturally absorbed* by rice plants.  Report at 1, 10.

As explained above, the FAC fails to connect the supposed harm or risk of harm resulting from the alleged levels of heavy metals in the Rice to any specific threshold indicating that level causes *actual* harm, and thus fails to allege the supposed "contamination" would be material.  This failure requires dismissal.  *See In re Pac. Mkt. Int'l, LLC Stanley Tumbler Litig.*, 764 F. Supp. 3d 1026, 1037, 1039 (W.D. Wash. 2025) ("Plaintiffs have not sufficiently alleged that the omission was material, as they have not shown sufficient harm from the specific amount of lead in the [products] . . . without sufficient allegations to show that the lead in the [products] could pose actual harm to consumers, 'the apparent need for disclosure is a moot proposition,'" as "the mere presence of lead could not be material to a reasonable consumer." (citations omitted)).

Indeed, "allowing these allegations to survive a motion to dismiss would green-light all kinds of lawsuits based merely on the presence of a material that, *in some specified amount*, could be harmful." *Id.* (citation omitted).  Ms. Tomassian's failure to allege that any putative level of heavy metals in the Rice is actually connected to some "specific and plausible risk of harm," as discussed in detail above, prevents the supposed omission from being material, precluding any duty to disclose on the part of Kroger. *Id.*

### (b)    The Purported "Defect" is Not Central to Function.

Ms. Tomassian also fails to allege a defect "central to the product's function" in a nonconclusory fashion. *In re Plum*, 2024 WL 1354447, at *4.  "To satisfy the 'central function' prong, plaintiffs must establish that the defect renders the product

KROGER'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FL
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

'incapable of use by any consumer.'" *Id.* at \*6 (quoting *Hodsdon*, 891 F.3d at 864). The Ninth Circuit has explained that "[a] computer chip that corrupts the hard drive, or a laptop screen that goes dark, render[ing] those products incapable of use by any consumer" are examples of defects that go to the "central functionality" of a product. *Hodsdon*, 891 F.3d at 864.

Ms. Tomassian makes only the most cursory of references to the central function of the Rice, baldly alleging (without substantiation) that "[f]ailure to provide safe and pure food . . . goes to the central function of a food product" and "[t]he [Rice] was not fit for its ordinary use (consumption by consumers) as they [sic] include undisclosed levels of Heavy Metals that do not conform to the packaging." FAC ¶¶ 43, 155. But that is not the standard. ***To establish a lack of central function for a food item, a plaintiff must plausibly plead that the item "ceases to function as food – or ceases to provide any nutritional value."*** *In re Theos*, 750 F. Supp. 3d at 1090 (emphasis added).

The FAC does not meet this bar. It includes no allegations suggesting that the Rice does not function as food or fails to provide any nutritional value. *See* FAC ¶ 39 (single serving of rice provides 13% daily value of necessary carbohydrates and 50mg of potassium); Report at 17, 19 (noting nutrition in rice).

Courts routinely reject claims similar to those of Ms. Tomassian that the alleged presence of heavy metals defeats a product's central function as food, and Ms. Tomassian similarly has failed—and indeed, would be unable—to allege as much here. *See Hayden*, 2024 WL 1643696, at \*10 ("The alleged presence of cadmium notwithstanding, Plaintiff has not plausibly pled that the Products have ceased to function as a food, or even more specifically as flaxseed"); *In re Theos*, 750 F. Supp. 3d at 1090 ("Plaintiffs have not plausibly pled that chocolate containing trace amounts of Heavy Metals ceases to function as food – or ceases to provide any nutritional value."); *In re Plum*, 2024 WL 1354447, at \*6 ("Even if consumers find the presence of these trace contaminants to be of material concern,

**DAVIS WRIGHT TREMAINE** LLP
350 SOUTH GRAND AVENUE, 27TH FL
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

the Baby Food continues to function as food if it contains these contaminants.");
*Cortez*, 2025 WL 1452561, at \*5 (baby bottles purportedly contaminated by microplastics "continue to deliver their liquid contents despite the presence of microplastics."). The FAC's conclusory allegations to the contrary are inadequate.

### (c)    None of the *LiMandri* Factors Is Alleged.

The FAC also fails to allege any one of the mandatory *LiMandri* factors. Ms. Tomassian does not attempt to allege that Kroger is her fiduciary, and as discussed above, Ms. Tomassian's counsel confirmed that misrepresentations are not at issue in this case. The only factors the FAC tries to address that would require Kroger to disclose information are accusations that (1) Kroger "had exclusive knowledge of the presence of Heavy Metals in the [Rice] that were not known or reasonably accessible to Plaintiff and the members of the class," FAC ¶¶ 124(a), 146(a), 166(a); and (2) Kroger "actively concealed the presence of Heavy Metals from Plaintiff and the members of the Class," *id.* ¶¶ 124(b), 146(b), 166(b). Neither is adequately pled.

**Exclusive Knowledge:** Ms. Tomassian cannot establish "exclusive knowledge" because the Report she relies upon repeatedly explains the naturally-occurring presence of heavy metals in rice has been well documented for *decades*. The second sentence of the Report acknowledges that "for over 25 years, [rice] has also been recognized as a leading dietary source of arsenic," and the Reports claims that its testing "build[s] on 25 years of research confirming the presence of arsenic in every rice variety from every growing region worldwide," even providing a convenient table summarizing over a *decade* of research into levels of arsenic in rice. Report at 1, 6, 12, 19. The public availability of knowledge about naturally-occurring heavy metals in rice dooms any attempt to satisfy this *LiMandri* factor that Kroger had "exclusive" knowledge. *See In re Plum*, 2024 WL 1354447, at \*5–6 ("The public availability of this information undermines plaintiffs' arguments that their allegations are sufficient to support defendant's exclusive knowledge and that

**DAVIS WRIGHT TREMAINE** LLP
350 SOUTH GRAND AVENUE, 27TH FL
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

plaintiffs had no reason to know of these facts."); *In re Plum*, 2025 WL 1200700, at *2 ("multiple publicly accessible sources have publicized test results showing detectable levels of heavy metals and perchlorate in Plum's products"); *Hayden*, 2024 WL 1643696, at *10 ("Plaintiff's allegations concerning Defendant's supposedly exclusive knowledge of cadmium are implausible in light of the publicly accessible nature of ConsumerLab.org's testing."); *Lopez*, 2025 WL 895213, at *9 ("Plaintiff's allegation that Defendants had 'exclusive knowledge of material facts' is contradicted by the public availability of '[i]ndependent testing also confirm[ing] Heavy Metals' in two of Defendants' products." (cleaned up)).

**Active Concealment:** Ms. Tomassian's allegations that Kroger "actively concealed" knowledge of heavy metals fails for similar reasons. She contends that Kroger's nondisclosure of information regarding heavy metals amounts to concealment, FAC ¶ 43, but neglects to explain *how* such nondisclosure is concealment—particularly in view of the publicly available nature of the relevant information. "Mere nondisclosure does not constitute active concealment." *Czuchaj v. Conair Corp.*, 2014 WL 1664235, at *6 (S.D. Cal. April 18, 2014) (citations omitted). Ms. Tomassian provides nothing but conclusory allegations— and certainly nothing to the specificity required under Rule 9(b)—concerning concealment, and her attempted pleading of this *LiMandri* factor also falls short. *See Lopez*, 2025 WL 895213, at *9 ("Plaintiff's allegation that Defendants 'actively conceal[ed] a material fact from [] [Plaintiff]' is entirely conclusory."); *Rodriguez v. Mondelēz Global LLC,* 703 F.Supp.3d 1191, 1210 (S.D. Cal. 2023) ("Because Plaintiffs have not plausibly alleged that MDLZ concealed an *unreasonable* safety hazard, the Court grants MDLZ's motion to dismiss with respect to Plaintiffs' CLRA, FAL, and UCL claims based on the fraud-by-omission theory.").

In sum, Ms. Tomassian fails to establish that Kroger had a legal obligation to disclose any information about naturally occurring heavy metals in the Rice.

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FL
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

**B.    Ms. Tomassian's Claims Fail for Additional Reasons.**

Ms. Tomassian's claims under the UCL and for unjust enrichment should also be dismissed because she does not allege any "unlawful," "unfair," or "fraudulent" conduct.

**No "Unlawful" Conduct:**  "[T]he UCL permits injured [parties] to 'borrow' violations of other laws and treat them as unlawful competition that is independently actionable." *Cortez*, 2025 WL 1452561, at \*7 (citation omitted).  As explained above, Ms. Tomassian's fails to allege a claim under the CLRA, the FAL, or for breach of the implied warranty of merchantability. *See id.* (dismissing UCL claim where "plaintiffs' 'unlawful' theory under the UCL rises or falls with its FAL and CLRA claims" and FAL and CLRA claims failed, also dooming unjust enrichment claim)).  Ms. Tomassian mentions the Sherman Law—for the first and only time in the FAC—in connection with her UCL claim, but fails to explain any purported violation of this law (let alone what it entails or prohibits), barring relief under Rules 8(a) and 9(b) at a minimum.  FAC ¶ 119; *see Mencia-Montes v. Fit Foods Distrib., Inc.*, 2025 WL 1185372, at \*6 (N.D. Cal. Mar. 31, 2025) ("Plaintiff has failed to identify the specific section(s) [of the Sherman Law] that were violated by Defendant's conduct.").  Even assuming the FAC attempts to make out a claim under the Sherman Law's sections regarding false advertising, this claim would *also* be governed by the reasonable consumer test and therefore fail.  *See Wong v. Iovate Health Scis. U.S.A. Inc.*, 2025 WL 821451, at \*9–10 (E.D. Cal. Mar. 14, 2025) (collecting cases applying reasonable consumer standard to federal law predicates of Sherman Law claims).

**No "Fraudulent" Conduct:**  As explained above, Kroger had no obligation to disclose and Ms. Tomassian's fraud claims therefore cannot survive—including her "fraudulent" UCL claim.  *See In re Plum*, 2024 WL 1354447, at \*4–7 (same standard for fraudulent prong of UCL as for FAL and CLRA; claim failed as defendant had no duty to disclose); *Cortez*, 2025 WL 1452561, at \*7 (same); *Lopez*,

2025 WL 895213, at *6–9 (same); *Hayden*, 2024 WL 1643696, at *7–10 (dismissing CLRA and UCL claim where defendant had no duty to disclose).

**No "Unfair" Conduct:**  The FAC purports to allege a violation of the UCL under its "unfair" prong, FAC ¶¶ 120–28.  But where, as here, "the plaintiffs' 'unfair prong claims overlap entirely with their claims of fraud,' the plaintiffs' unfair prong claim cannot survive" if their fraud claims also fail. *Cortez*, 2025 WL 1452561 at *7 (quoting *Ahern v. Apple Inc.*, 411 F. Supp. 3d 541, 560 (N.D. Cal. 2019)).  In addition, the FAC's feeble attempt to "tether" to legislative policies is equally insufficient, as the FAC attempts to base its claim under this prong— without any explanation—on the same FAL claim that, based on Ms. Tomassian's overarching theory of fraud, fails because Kroger had no obligation to disclose. FAC ¶ 122; *see id.*; *Barton*, 2025 WL 486316, at *13; *In re Plum*, 2024 WL 1354447, at *7 ("As to the 'tethering' test, plaintiffs point only to statutory claims this Court rejected.").  Kroger had no obligation to disclose any information, and therefore any "failure to disclose information [Kroger] had no duty to disclose in the first place is not substantially injurious, immoral, or unethical." *Hodsdon*, 891 F.3d at 867 (citation omitted).  The Ninth Circuit also noted that "the failure to disclose is not substantially injurious" where the relevant information "is public knowledge"—and the Report makes the extensive public availability of information about naturally-occurring heavy metals in Rice clear. *Id.*

**C.    Ms. Tomassian Is Not Entitled to the Relief Sought.**

In addition to the deficiencies in her claims, Ms. Tomassian prays for relief in forms she is not entitled to:  namely, (1) punitive damages and (2) equitable relief (3) on behalf of a nationwide class.

**1.    The Claim for Punitive Damages Should Be Dismissed.**

Ms. Tomassian fails to make factual allegations sufficient to support her request for punitive damages.  "California federal district courts have consistently held that a plaintiff who seeks punitive damages against a corporate defendant must

KROGER'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FL
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

plead more than non-conclusory allegations that an officer, director or managing agent of the defendant authorized or ratified the conduct that constitutes malice, fraud or oppression." *Rozier v. Dep't of Homeland Sec. Fed. Protective Serv.*, 2022 WL 2199938, at *3 (C.D. Cal. Mar. 7, 2022)* (collecting cases); *see also* Cal. Civ. Code § 3294(b). Failure to plead "the names or titles of *any* individual actor is a fatal defect." *Taiwan Semiconductor Mfg. Co., Ltd. v. Tela Innovations, Inc.*, 2014 WL 3705350, at *6 (N.D. Cal. July 24, 2014)*; *see also Vermillion v. Corr. Corp. of Am.*, 2008 WL 4058063, *11 (E.D. Cal. Aug. 28, 2008)* (dismissing punitive damages claim where complaint "fail[ed] to point to conduct of officers or directors"). And where a plaintiff alleges only the conclusory statement that a defendant's conduct was "willful and malicious," the claim for punitive damages will not survive a motion to dismiss. *Rausch v. Flatout, Inc.*, 660 F. Supp. 3d 855, 863 (N.D. Cal. 2023). The FAC does not include any allegations either (1) identifying any individual agent of Kroger; or (2) suggest the individual authorized or ratified the any "willful" or "malicious" conduct. The Court should therefore dismiss her request for punitive damages.

### 2.    Equitable Relief Is Improper.

Ms. Tomassian fails to allege facts sufficient to state a claim for equitable relief, which is fatal to the UCL, FAL, and unjust enrichment claims.

As the Ninth Circuit has explained, a plaintiff "must establish that she lacks an adequate remedy at law before securing equitable restitution for past harm." *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020). At the pleading stage, "plaintiff must, at a minimum, plead that he lacks adequate remedies at law if he seeks equitable relief." *Scheibe v. Performance Enhancing Supplements, LLC,* 2023 WL 3829694, at *5 (S.D. Cal. June 5, 2023). Where a plaintiff "seeks the same sum in equitable restitution" as "requested in damages" for the same harm, without any other explanation for how those damages are

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FL
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

"inadequate," dismissal is appropriate. *See Sonner*, 971 F.3d at 844 (affirming dismissal for claims of equitable restitution under the UCL and CLRA).

That is precisely the case here:  rather than plead the inadequacy of her legal remedies, Ms. Tomassian instead seeks actual damages in addition to restitution and disgorgement.  FAC ¶¶  148, 161, 169, Prayer.  The FAC thus asserts the availability of "the same amount of money for the exact same harm" that Plaintiffs seek through equitable monetary remedies. *Sonner*, 971 F.3d at 844.  Because "[i]t is well-established that claims for relief under the FAL and UCL are limited to restitution and injunctive relief," these claims and all Ms. Tomassian's claims for equitable relief must be dismissed. *Iglesias v. Arizona Beverages USA, LLC*, 2023 WL 4053803, at *5–6 (N.D. Cal. June 16, 2023) (also dismissing unjust enrichment claim seeking equitable restitution as "Plaintiff fail[ed] to demonstrate that he lacks an adequate remedy at law").

### 3.    The Nationwide Class Claims Should Be Dismissed.

Last, Ms. Tomassian cannot assert California consumer protection claims on behalf of a nationwide class. *See* FAC ¶¶ 103, 11–169.

"A court may strike class allegations before a motion for class certification if 'the matter is sufficiently obvious from the pleadings.'" *Kramer v. Wilson Sporting Goods Co.*, 2013 WL 12133670, at *4 (C.D. Cal. Dec. 13, 2013) (Walter, J.) (citing *Route v. Meade*, 2013 WL 658251, at *8 (C.D. Cal. Feb. 21, 2013)).  And the Ninth Circuit has held that variations in state law pose insurmountable problems for proposed "nationwide" consumer-fraud claims. *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589–94 (9th Cir. 2012) (decertifying a nationwide class because "each class member's consumer protection claim should be governed by the consumer protection laws of the jurisdiction in which the transaction took place."), *overruled on other grounds by Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir. 2022); *see also Glenn v. Hyundai Motor Am.*, 2016 WL 3621280, at *4, *10, *13 n.9 (C.D. Cal. June 24, 2016) (applying *Mazza*

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FL
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

and granting motion to dismiss); *Vinci v. Hyundai Motor Am.*, 2018 WL 6136828, at *5 (C.D. Cal. Apr. 10, 2018) (*Mazza* "applies generally and is instructive when addressing a motion to dismiss, as many courts have recognized") (collecting cases).

Ms. Tomassian attempts to assert her California claims on a nationwide basis for a nationwide class. FAC ¶ 103. But the consumer protection laws of each class member's home state must be applied to that person's claims, and Ms. Tomassian's putative nationwide class therefore cannot be maintained given (1) there are "material differences" between state consumer laws; (2) "each state has a strong interest in applying its own laws to . . . transactions" within its boundaries; and (3) California's interest in applying its laws to foreign transactions and nonresidents is "attenuated." *Mazza*, 666 F.3d at 591–92, 598; *see also Kramer*, 2013 WL 12133670, at *4–6 (striking nationwide class allegations premised on, *inter alia*, UCL, FAL, and CLRA claims). Ms. Tomassian may therefore only pursue claims on behalf of herself and a California class.

## V.    CONCLUSION

The Court should grant this Motion to Dismiss with prejudice.


Dated: September 19, 2025                    DAVIS WRIGHT TREMAINE LLP

                                             By: /s/ Jacob M. Harper
                                                 Jacob M. Harper

                                             *Attorney for Defendant*
                                             *The Kroger Co.*

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FL
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899

## <u>CERTIFICATION</u>

The undersigned counsel of record for The Kroger Co. certifies that this brief complies with the 25-page limit set forth in the Court's Standing Order dated June 26, 2025.

Dated: September 19, 2025                    DAVIS WRIGHT TREMAINE LLP

                                            By: /s/ Jacob M. Harper
                                                 Jacob M. Harper

                                            *Attorney for Defendant*
                                            *The Kroger Co.*

KROGER'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

DAVIS WRIGHT TREMAINE LLP
350 SOUTH GRAND AVENUE, 27TH FL
LOS ANGELES, CALIFORNIA 90071
(213) 633-6800
Fax: (213) 633-6899