Trenton R. Kashima (CA SBN No. 291405)
tkashima@brysonpllc.com
**BRYSON HARRIS SUCIU**
**& DEMAY PLLC**
280 S. Beverly Drive, Ste. PH
Beverly Hills, CA 90212
Tel: (619) 810-7047

*Attorney for Plaintiff and the Proposed Class*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARY TOMASSIAN, individually and on behalf of all others similarly situated,<br><br>                                   Plaintiff,<br><br>v.<br><br>THE KROGER CO.,<br><br>                                   Defendant. | Case No.: 2:25-cv-05608-JFW-PVC<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**<br><br>Date:      November 3, 2025<br>Time:     1:30 P.M.<br>Room:    Courtroom 7A<br>Judge:    Hon. John F. Walter |

# TABLE OF CONTENTS

INTRODUCTION ................................................................................1

DEFENDANT'S REQUEST FOR JUDICIAL NOTICE ..........................................2

LEGAL STANDARD..........................................................................2

ARGUMENT ....................................................................................2

    A.    Plaintiff Sufficiently Pleads Her Omission based Theory of Deception ....................................................................................2

        1.    Duty to Disclose.................................................................3

            i.    Cadmium and Arsenic are Present in the Basmati Rice at Unreasonable Levels.................................................3

            ii.    Plaintiff Pled that Defendant had Exclusive Knowledge and Concealed the Amount of Heavy Metals in the Products ....................................................9

        The Omissions are Material .....................................................10

        Defendant had Exclusive Knowledge of the Heavy Metals .....11

        Defendant Actively Concealed Material Facts ........................13

    B.    Plaintiff's UCL Unlawful and Unfair Claims are Sufficiently Pled ...14

    C.    Plaintiff's Implied Warranty Claim is Sufficiently Pled....................15

    D.    Equitable Relief is Proper ..................................................16

    E.    Nationwide Claims Should not be Dismissed.....................................18

CONCLUSION ..................................................................................19

# TABLE OF AUTHORITIES

Page(s)

<u>Federal Cases</u>

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................................2

*Barton v. Kimberly-Clark Corp*., No. 3:24-CV-01337-GPC-KSC, 2025 WL 2345228 (S.D. Cal. Aug. 13, 2025)...................................................................8

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)....................................................2

*Bland v. Sequel Nat. Ltd*., No. 18-CV-04767-RS, 2019 WL 4674337 (N.D. Cal. Aug. 2, 2019) .......................................................................................................7

*Blue Cross Blue Shield Ass'n v. GlaxoSmithKline LLC*, 417 F. Supp. 3d 531 (E.D. Pa. 2019) .................................................................................................16

*Boyd v. SunButter, LLC*, 762 F. Supp. 3d 931 (C.D. Cal. 2025), *adopted*, No. CV 24-7873-GW-BFMX, 2025 WL 84700 (C.D. Cal. Jan. 13, 2025) .................7, 15

*Buckey v. Cnty. of Los Angeles*, 968 F.2d 791 (9th Cir. 1992)................................2

Byton N. Am. Co. v. Breitfeld, 2020 WL 3802700 (C.D. Cal. Apr. 28, 2020) 17, 18

*Carroll v. Myriad Genetics, Inc.*, 2022 WL 16860013 (N.D. Cal. Nov. 9, 2022) ..17

*Cel–Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.* 20 Cal.4th 163 (1999) ......................................................................................................................14

*Concha v. London*, 62 F.3d 1493 (9th Cir. 1995)...................................................12

*Cooper v. Pickett*, 137 F.3d 616 (9th Cir. 1997) .....................................................2

*Daniel v. Ford Motor Co.*, No. 2:11-02890 WBS EFB, 2016 WL 2899026 (E.D. Cal. May 18, 2016)..........................................................................................12

*Dean v. Colgate-Palmolive Co.*, No. EDCV 15-0107 JGB, 2015 WL 3999313 (C.D. Cal. June 17, 2015)........................................................................................2

*Falk v. Gen. Motors Corp*., 496 F. Supp. 2d 1088 (N.D. Cal. 2007) .....................13

*Fehrenbach v. Hewlett Packard Co.,* 2017 WL 11422106 (S.D. Cal. Jan. 5, 2017) ......................................................................................................................18

*Gagetta v. Walmart, Inc.,* 646 F. Supp. 3d 1164 (N.D. Cal. 2022) ..........................6

*Garcia v. Gen. Motors LLC*, No. 118CV01313LJOBAM, 2018 WL 6460196 (E.D. Cal. Dec. 10, 2018) ............................................................................11

*Haas v. Travelex Ins. Servs. Inc.*, 555 F. Supp. 3d 970 (C.D. Cal. 2021) ..............17

*In re Baby Food Prods. Liab. Litig.*, No. 24-MD-03101-JSC, 2025 WL 986959 (N.D. Cal. Apr. 2, 2025) .......................................................................9

*In re Lindt & Sprungli (USA), Inc., Dark Chocolate Litig.*, No. 23-CV-1186 (AMD) (JAM), 2024 WL 4107244 (E.D.N.Y. Sept. 6, 2024) ....................16

*Johnson v. Trumpet Behavioral Health, LLC*, 2022 WL 74163 (N.D. Cal. Jan. 7, 2022) .................................................................................17

*Junhan Jeong v. Nexo Financial LLC*, 2022 WL 174236 (N.D. Cal. Jan. 19, 2022) ..............................................................................................16

*Kwikset Corp. v. Sup. Ct.*, 51 Cal. 4th 310 (2011) ...............................................10

*Linear Tech. Corp. v. Applied Materials, Inc.*, 152 Cal. App. 4th 115 (2007) .........3

*McKell v. Washington Mut., Inc.*, 142 Cal. App. 4th 1457 (2006) ..........................14

*Miller v. Philips N. Am. LLC,* No. 24-CV-03781-RFL, 2025 WL 582160 (N.D. Cal. Feb. 20, 2025) .......................................................................8

*Nacarino v. Chobani, LLC*, 2022 WL 344966 (N.D. Cal. Feb. 4, 2022), *motion to certify appeal denied*, 2022 WL 833328 (N.D. Cal. Mar. 21, 2022) ..................17

*Realtek Semiconductor Corp. v. MediaTek, Inc.*, 732 F. Supp. 3d 1101 (N.D. Cal. 2024) ...............................................................................2

*Rodriguez v. Mondelez Glob. LLC*, 703 F. Supp. 3d 1191 (S.D. Cal. 2023) ...........9

*Rubenstein v. Neiman Marcus Grp. LLC*, 687 F. App'x 564 (9th Cir. 2017)..........12

*Sagastume v. Psychemedics Corp.*, 2020 WL 8175597  (C.D. Cal. Nov. 30, 2020) ..............................................................................................17

*Salas v. Toyota Motor Sales, U.S.A., Inc.*, No. CV 15-8629 FMO (EX), 2016 WL 7486600 (C.D. Cal. Sept. 27, 2016) ........................................ 11, 12, 13

*Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020) ..........................16

*Sultanis v. Champion Petfoods USA Inc.*, No. 21-cv-162-EMC, 2021 WL 3373934 (N.D. Cal. Aug. 3, 2021) .......................................................................18

- iii -

*Tait v. BSH Appliances Corp.*, No. SACV 10–00711 DOC, 2011 WL 3941387 (C.D. Cal. 2011) ...................................................................................13

*Underwood v. O'Reilly Auto Parts, Inc.*, 699 F. Supp. 3d 1049 (D. Nev. 2023) ....15

*United States v. Lang*, 2007 WL 628048 (S.D. Cal. Feb. 23, 2007) ......................11

*Warren v. Whole Foods Mkt. California, Inc.*, 2022 WL 2644103 (N.D. Cal. July 8, 2022)...................................................................................................17

*Warshaw v. Xoma Corp.*, 74 F.3d 955 (9th Cir. 1996)..............................................2

*Williams v. Gerber Prods. Co*., 552 F.3d 934 (9th Cir. 2008) .................................3

*Won Kyung Hwang v. Ohso Clean, Inc.*, 2013 WL 1632697 (N.D. Cal. Apr. 16, 2013)......................................................................................................18

*Zapata Fonseca v. Goya Foods Inc*., 2016 WL 4698942 (N.D. Cal. Sept. 8, 2016) .........................................................................................................18


**State Statutes**

Cal. Com. Code § 2314...........................................................................................15

21 C.F.R. § 117.135 ......................................................................................... 13, 14

Cal. Health & Safety Code § 110105 ......................................................................16

Cal. Health & Safety Code § 25249.6 .....................................................................14


**Federal Rules**

Fed. R. Civ. P. 8 .....................................................................................................17

Fed. R. Civ. Pro. § 9(b)...........................................................................................12


**Other Authorities**

26 Am. Jur. 2d 1 .....................................................................................................15

Plaintiff Mary Tomassian ("Plaintiff"), individually, and on behalf of all others similarly situated, respectfully submits this Memorandum of Law in Opposition to Defendant The Kroger Co.'s ("Kroger" or "Defendant") Motion to Dismiss, ECF No. 22 (the "Motion"), Plaintiff's First Amended Complaint, ECF No. 19 ("Complaint" or "FAC"):

## **INTRODUCTION**

Defendant's Motion builds a strawman of Plaintiff's Complaint, stating that its Kroger branded Basmati Rice only contain "*de minimis* levels of naturally occurring" heavy metals (more specifically arsenic and cadmium) found in all "rice, grains, and myriad other plant foods." Defendant, thus, attempts to paint Plaintiff and her counsel as a vexatious litigant, filing complaints against any rice that contains even trace levels of arsenic and cadmium. Yet, a review of the actual allegations in the Complaint denote otherwise. The Complaint (and the independent third-party testing cited therein) alleges that Defendant's Basmati Rice contains heavy metals in amounts that exceed those found in competing rice products by more than *five times*, as well as state and federal guidelines for these toxic elements. Accordingly, this case is not about "*de minimis*" levels of heavy metals native to all rice products, but Defendant's negligent sourcing of rice that have dangerous and material levels of arsenic and cadmium. And this fact is not disclosed to consumers.

Accordingly, Plaintiff alleged that she and other putative class members were injured because they either (1) paid more for Defendant's harmful Basmati Rice; or (2) would have purchased one of the many other Basmati rice on the market, had the presence of heavy metals been disclosed. Additionally, Plaintiff alleged that Defendant was aware of the harmful heavy metals in its Basmati Rice because, by law, it was required to control for such hazards under state and federal law.

It is these facts that the Court should accept as true, for purposes of this Motion and not Defendant's sanitized recital of the underlying facts.

## DEFENDANT'S REQUEST FOR JUDICIAL NOTICE

Plaintiff does not oppose Defendant's Request for Judicial Notice ("RJN"), ECF No. 22-3 ("RJN"), to the extent that it seeks judicial notice of the existence of the Exhibit A and its contents. *See Realtek Semiconductor Corp. v. MediaTek, Inc.*, 732 F. Supp. 3d 1101, 1111 (N.D. Cal. 2024).

## LEGAL STANDARD

To overcome a motion to dismiss, a plaintiff must state "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has "facial plausibility" if the plaintiff pleads facts that "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Thus, "[a] complaint should not be dismissed under Rule 12(b)(6) 'unless it appears beyond doubt that plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief.'" *Buckey v. Cnty. of Los Angeles*, 968 F.2d 791, 794 (9th Cir. 1992). At this state, the Court should "take as true all allegations of material fact stated in the complaint and construe them in the light most favorable to the nonmoving party." *Warshaw v. Xoma Corp.*, 74 F.3d 955, 957 (9th Cir. 1996).

Rule 9(b) requires more detailed pleading where fraud is alleged. *See Cooper v. Pickett*, 137 F.3d 616, 625 (9th Cir. 1997). However, "Rule 9(b) is not an insurmountable hurdle." *Dean v. Colgate-Palmolive Co.*, No. EDCV 15-0107 JGB, 2015 WL 3999313, at *7 (C.D. Cal. June 17, 2015). It only requires that "[a]verments of fraud must be accompanied by the 'the who, what, when, where, and how' of the misconduct charged" and that the "complaint must be specific enough to give defendants notice of the particular misconduct." *Id.*

## ARGUMENT

### A.    Plaintiff Sufficiently Pleads Her Omission based Theory of Deception

Plaintiff does not dispute that her Unfair Competition Law ("UCL"), False

Advertising Law ("FAL"), and Consumer Legal Remedies Act ("CLRA") claims arise from allegations that Defendant did not disclose the harmful and material levels of heavy metals in its Basmati Rice, *i.e.* an omission.[1] Motion, p. 13:15-18. Plaintiff further does not dispute that whether a deceptive business practice is actionable turns on the "reasonable consumer" standard, even in the omission context. *Id.* at p. 14:1-4. But whether an omission is deceptive is normally a question of fact incapable of resolution on a motion to dismiss. *Williams v. Gerber Prods. Co*., 552 F.3d 934, 938 (9th Cir. 2008). This inquiry is fact intensive, requiring "consideration and weighing of evidence from both sides." *Linear Tech. Corp. v. Applied Materials, Inc*., 152 Cal. App. 4th 115, 134 (2007).

Nonetheless, Defendant suggests that the Court can forgo the normal fact finding, and determine as a matter of law, before discovery has commenced, that there was no deception. Such a shortcut is not warranted here.

### 1.  Duty to Disclose

The main thrust of Defendant's Motion is that it did not have a duty to disclose to presence of cadmium and arsenic in food products, despite their toxic nature. Motion, pp. 13:15-22:27. But even Defendant concedes that it has a duty to disclose defects that "relates to an unreasonable safety hazard," so long as Defendant had "exclusive knowledge of material facts not known or reasonably accessible to the plaintiff" or "when the defendant actively conceals a material fact from the plaintiff." Motion at p. 14:11-26. Here, Plaintiff has alleged just that.

#### i.  *Cadmium and Arsenic are Present in the Basmati Rice at Unreasonable Levels.*[2]

---

[1] Although, Plaintiff does dispute that her unjust enrichment and violation of the implied warranty of merchantability are necessary based on Defendant's omission. *See* Motion at p. 13:15-18. For reasons set out herein, these claims are based on whether the Basmati Rice are of minimum merchantable quality and whether they should have been sold in the first place.

[2] Plaintiff concedes that it does not plead the "central to the product's function," but reserves the right to do so on amendment.

As an initial matter, Defendant states that Plaintiff does not plead that the Basmati Rice have unreasonable and harmful levels of heavy metals. In doing so, Defendant ignores the main thrust of Plaintiff's complaint and misunderstands the underlying law.

First, Plaintiff's Complaint recites the harm associated with arsenic and cadmium contamination. FAC ¶¶ 45-70. For example, even "modest amounts of heavy metals can increase the risk of cancer, cognitive and reproductive problems, and other adverse conditions" and these effects are even more pronounced in children. FAC ¶ 45-46. But the most significant issue with heavy metal toxicity is that they "bioaccumulate in the body, meaning the body cannot excrete the toxins as quickly as they are absorbed and the risk they pose increases over time and can remain in one's body for years." FAC ¶¶ 56, 70. Thus, while heavy metal toxicity may not be an immediate concern at lower levels of exposure, these amounts can build over time. For this reason, repeated exposure (and not immediate ingestion) is specifically concerning when it comes to heavy metal toxicity. This is a concern that is more heightened when discussing consumption of a staple food,[3] such as rice, which may be eaten on a regular basis. FAC ¶ 30 (Plaintiff notes that, on average, consumers of rice eat just over a cup of cooked rice per day).

Nonetheless, even at lower levels, arsenic and cadmium are particularly toxic. Plaintiff specifically alleged that "[b]ased on the risks associated with exposure to higher levels of arsenic, both the U.S. Environmental Protection Agency ("EPA") and FDA have set limits concerning the allowable limit of arsenic at 10 parts per billion ("ppb") for human consumption in apple juice (regulated by the FDA) and drinking water (regulated by the EPA) as a maximum contaminant level" and "the

---

[3] *See* RJN, Ex. A at p. 26-27 ("Rice is the most widely eaten solid food in the world and a dietary staple for over a billion children" and noting that "[f]or one-third of families, rice is either an important, frequent main dish or the single most important food in their diet.").

FDA has set the maximum allowable arsenic levels in bottled water at 10 ppb of inorganic arsenic." FAC ¶¶ 62-63. Plaintiff further alleges that "even low levels of cadmium over time may build up cadmium in the kidneys and cause kidney disease and bone loss," thus "[a]ny cadmium exposure should be avoided." FAC ¶ 65. Unsurprisingly, cadmium "displays a troubling ability to cause harm at low levels of exposure." FAC ¶ 69. This is likely why California established "Maximum Allowable Dose Levels" of cadmium at 4.1 μg/day. FAC ¶ 30, n. 5.

Here, Defendant's Basmati Rice was reported to have 81.1 ppb inorganic arsenic (3.649 μg/serving) and, more significantly 108 ppb of cadmium (4.86 μg/serving). FAC ¶¶ 11, 30, n.5, 6. To put that in context, a serving of the Basmati Rice is only 45 grams (approximately 3/4 cup of cooked rice), "representing only 8 percent (or 160 calories) of the 2,000 daily calories that the FDA uses to calculate daily values on nutritional labels." FAC ¶ 30. Nonetheless, the Basmati Rice "contributes more than 118 percent of the California Maximum Allowable Dose Levels ('MADLs') for reproductive toxicants for cadmium[fn] and approximately 36 percent of the No Significant Risk Levels ('NSRLs') for inorganic arsenic." *Id.* ¶ 30, n.5, 6. Yet, the Complaint also notes that studies show that consumers, on average, eat just over a cup of cooked rice per day. *Id.* ¶ 30. "This means that a consumer of rice can eat vastly more than their MADLs of cadmium, and almost 50 percent of their NSRLs for inorganic arsenic from consuming an average daily amount of Defendant's Product (which only represents the amount of food eaten as a side dish for a meal)." *Ibid.*

The Complaint further alleges why the heavy metals in Defendant's Basmati Rice are particularly harmful and unreasonable. While Defendant notes that there is some level of heavy metals in all rice sold on the market, citing the May 14, 2025 report published by Healthy Babies Bright Futures (the "Report") referred to in the Complaint, Defendant fails to put the Report's findings in context. Motion at p. 10:1-10. Defendant's Basmati Rice was specifically criticized by the Report for having

significantly higher levels of cadmium than the 145 products tested. RJN, Ex. 1 at p. 26. This was troubling because, as the Report notes, rice generally has "lower cadmium levels than other grains," but Defendant's Basmati Rice "stood out with elevated concentrations—above 100 ppb, and higher than amounts in any alternative grain tested." *Id.* This is why Plaintiff alleged that:

> Lab testing found that the Product contained 81.1 parts per billion of inorganic arsenic and 108 parts per billion of cadmium.[fn] Indeed, this same lab testing singled out Defendant's Basmati Rice as one of the three rice products with the highest cadmium levels (this despite the fact that Basmati Rice, in general, has lower levels of heavy metals).[2] This is much higher than the average levels of Heavy Metals found in Defendant's competitors. Indeed, this study found that the average amount of inorganic arsenic in rice was 84.8 ppb and average amount of cadmium levels were 18.8 ppb.[fn] Accordingly, based on Defendant's Omissions, consumers are deceived into purchasing an inferior and more dangerous product than its competitors.

FAC ¶ 11. Put differently, Defendant's Basmati Rice had over *five times* the amount of toxic heavy metals than other rice products available on the market and *above established California state maximum safety limits*. Here, it is difficult to understand how Defendant can claim that Plaintiff failed to allege that the amount of heavy metals in the Basmati Rice was unreasonable and harmful.

And the resulting economic injury is also clear. Plaintiff alleged that she and other class members would not have purchased Defendant's Basmati Rice, or would have paid less, had they known that the Basmati Rice contains or has the risk of containing significant amounts of heavy metals. *See, e.g.,* FAC ¶¶ 2, 12-13, 23, 41, 84, 92. There is an actual harm associated with consumers overpaying for food products that they did not know risked containing significant heavy metals, when they could have easily purchased a competing product without the same risks. *See Gagetta v. Walmart, Inc.,* 646 F. Supp. 3d 1164, 1175 (N.D. Cal. 2022). Indeed, it is not a logical leap to assume that consumers, when faced with two identical Basmati rice products, would choose the one without elevated levels of heavy metals, if given the option. For this same reason, Plaintiff reasonably alleges that the presence of elevated levels of heavy metals would be material because it would affect their

purchasing decision (and ultimately the price of the Basmati Rice). Here, Plaintiff alleges that _Defendant's Basmati Rice_ is specifically and uniquely toxic, and does not simply allege that all rice products are contaminated.

Second, Defendant argues that that Plaintiff fails to connect the amount of heavy metals found in the Basmati Rice with a specific "unsafe" level. Motion at pp. 15:20-18:15. As an initial matter, Plaintiff not only describes the detrimental health consequences associated with heavy metal exposure (even at low levels) (FAC ¶¶ 45-70), but specifically alleges that: (1) the arsenic in the Basmati Rice (81.1 ppb) was above the maximum contaminant level allowed in other food applications (10 ppb for water and apple juice) based on legitimate safety concerns (FAC ¶¶ 30, 63), and (2) the amount of cadmium exceeds California's MADLs (FAC ¶ 30). Obviously, if the Basmati Rice exceeds arsenic safety limits established for the water that it is cooked in and California's "Maximum Allowable Dose Levels" for cadmium, it creates a reasonable inference that the Basmati Rice is unsafe. _Bland v. Sequel Nat. Ltd_., No. 18-CV-04767-RS, 2019 WL 4674337, at *5 (N.D. Cal. Aug. 2, 2019) (noting that MADLs for cadmium and lead could serve to show that a product is unsafe). And this conclusion is only reinforced by fact that Defendant's Basmati Rice contains much higher cadmium levels than its competitors. _See Boyd v. SunButter, LLC_, 762 F. Supp. 3d 931, 949 (C.D. Cal. 2025), _adopted_, No. CV 24-7873-GW-BFMX, 2025 WL 84700 (C.D. Cal. Jan. 13, 2025) ("Plaintiffs repeatedly allege that the Products contain an unsafe amount of cadmium that poses an unreasonable safety hazard, far exceeds recognized U.S. health standards, and far exceeds the amount contained in the products of Defendant's competitors, such as Once Again."). This is sufficient to allege that the Basmati Rice is unreasonable safety risk. _Id._

While Defendant criticizes Plaintiff's reference of the MADLs noting that "MADLs are set substantially lower than the level at which exposure to a chemical would cause 'an observable effect,' let alone actual harm." Motion at pp. 16:16-17:7.

It is important to note that MADLs only addresses reproductive toxicity, and not the other health consequences alleged in the Complaint, such as cardiovascular disease, bone loss, gastroenteritis, liver and kidney disease, cardiomyopathy, and metabolic acidosis. FAC ¶¶ 65-66 citing, *e.g.*, M. Nathaniel Mead, *Cadmium Confusion: Do Consumers Need Protection? Environmental Health Perspectives*, Dec. 2010, available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3002210/. Other sources place the acceptable daily intake level of cadmium much lower, estimating an acceptable daily intake level of 0.1 μg/kg body weight/day for chronic exposure. Nathaniel Mead, *Cadmium Confusion: Do Consumers Need Protection? Environmental Health Perspectives*, Dec. 2010, available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC3002210/ (last accessed Oct. 9, 2025). Nonetheless, we may be wandering too far into the merits of the claim at this stage of the litigation. The fact that Defendant's products exceed the MADLs for cadmium, even viewed in the most favorable light, as required on a motion to dismiss, gives credence to Plaintiff's allegations that the Basmati Rice is unsafe.

Moreover, it is not "black-letter law" (as Defendant suggests) that in food adulteration cases that Plaintiff established a "specific content level associated with actual harm" in order to bring a case. *See* Motion at pp. 115:20-15. Such a requirement cannot be found in the UCL, CLRA, FAL, FDCA, or Sherman Law, and has been criticized in several recent decisions from district courts within the Ninth Circuit. *See, e.g., Miller v. Philips N. Am. LLC,* No. 24-CV-03781-RFL, 2025 WL 582160, at *3 (N.D. Cal. Feb. 20, 2025) ("At this stage, Plaintiffs are not required to allege the specific level at which microplastics pose a danger to the sensitive population. Rather, it is sufficient to allege a plausible connection between the harms to infants and the significant bioaccumulation of microplastics at the high levels described above."); *Barton v. Kimberly-Clark Corp.*, No. 3:24-CV-01337-GPC-KSC, 2025 WL 2345228, at *7 (S.D. Cal. Aug. 13, 2025) ("The Court acknowledges that some courts have required Plaintiffs to allege a particular level

of lead that is associated with harm to support a misrepresentation claim involving heavy metals in products… The Court finds that this would veer too close to a question of fact that would be inappropriate to require at this procedural stage."); *In re Baby Food Prods. Liab. Litig.*, No. 24-MD-03101-JSC, 2025 WL 986959, at *16 (N.D. Cal. Apr. 2, 2025) ("In sum, there is no ironclad rule that Plaintiffs must allege the threshold dose of a toxic substance to advance their claims, and the Court will not require as much here."). This is because "[w]hat constitutes an 'unsafe level' of [arsenic] or cadmium is a question of fact not appropriately resolved on a motion to dismiss." *Rodriguez v. Mondelez Glob. LLC*, 703 F. Supp. 3d 1191, 1205 (S.D. Cal. 2023) (rejecting defendant's argument that "Plaintiffs cannot allege the Products contain unsafe levels of lead and cadmium just because the levels of lead and cadmium exceed the default MADLs set by regulation.").

Similarly, here, the Court should not hold that Defendant's Basmati Rice is safe based solely on Defendant's unsupported argument that it is. Instead, the Court should accept the well-pled facts of the Complaint as true. Here, Plaintiff pled that the heavy metals in the Basmati Rice exceed its competitors, as well as safety limits established by state and federal regulations, as is unsafe. This is sufficient not only to establish that the heavy metals in the Basmati Rice are unreasonable and harmful, but would cause consumers not to purchase the Product.

      ii.     *Plaintiff Pled that Defendant had Exclusive Knowledge and Concealed the Amount of Heavy Metals in the Products* [4]

Defendant further challenges Plaintiff on the so-called "*LiMandri* factors." Motion at pp. 18:17-22:27. More specifically, Defendant claims that the alleged omissions are not material, and that Plaintiff failed to sufficiently plead that Defendant had exclusive knowledge or concealed the amount of heavy metals contained within the Basmati Rice. *Id.* Such arguments are without merit.

---

[4] Plaintiff does not plead the other two *LiMandri* factors: "partial representations" and "fiduciary duty."

<u>The Omissions are Material</u>

As an initial matter, Defendant asserts that the "Defect" is not material for the same reasons it asserts that Plaintiff did not plead that the levels of heavy metals in the Basmati Rice was unreasonable and harmful. *See* Motion at pp. 18:24-19:24. These arguments were addressed in the previous section. Defendant, however, notes that the "Heavy Metals are *naturally occurring* in soil and *naturally absorbed* by rice plants," suggesting that no consumer would therefore care if the Basmati Rice trace levels of these elements. *See id.* at p. 4-6. In doing so, Defendant ignores the Complaint, which specifically alleges that the amount of heavy metals, particularly cadmium, found in the Basmati Rice was <u>*five times*</u> higher than over hundred rice products tested. FAC ¶ 11. Defendant further fails to explain why consumers would not care if they purchased a rice product that had significantly higher amounts of toxic heavy metals, which are known to accumulate in the body.

Thus, this case is not about the "mere presence" of heavy metals, as Defendant suggests. Motion at p. 19:7-17. Nor would a ruling in favor of Plaintiff "green-light all kinds of lawsuits based merely on the presence of a material that, in some specified amount, could be harmful." *Id.*, at p. 19:18-20. Instead, this case is about Defendant's marketing and sale of the Basmati Rice that has higher heavy metal levels than its competitors, at levels which exceed federal and state limits, without disclosing this risk. Put differently, "based on Defendant's Omissions, consumers are deceived into purchasing an inferior and more dangerous product than its competitors." FAC ¶ 11.

Nonetheless, Plaintiff pleads that they would not purchase, or paid less, if they had known about the specific amount of heavy metals at issue. FAC ¶¶ 2, 12-13, 23, 41, 84, 92. This is sufficient to plead materiality. *See Kwikset Corp. v. Sup. Ct.*, 51 Cal. 4th 310, 332 (2011) ("A misrepresentation is judged to be 'material' if 'a reasonable man would attach importance to its existence or nonexistence in determining his choice of action in the transaction in question'....").

Defendant had Exclusive Knowledge of the Heavy Metals

Additionally, Plaintiff sufficiently alleged that Defendant had "exclusive knowledge" of the alleged heavy metal contamination. "Generally, courts have not defined 'exclusive' literally, but have found such claims cognizable if the defendant had 'superior' knowledge of a defect that was not readily apparent and there is no or only ... limited publicly available information about the defect." *Salas v. Toyota Motor Sales, U.S.A., Inc*., No. CV 15-8629 FMO (EX), 2016 WL 7486600, at *10 (C.D. Cal. Sept. 27, 2016) (*quoting Daniel v. Ford Motor Co*., No. 2:11-02890 WBS, 2016 WL 2899026, at *4 (E.D. Cal. 2016)).

Here, Plaintiff alleged that consumers lack the meaningful ability to test or independently ascertain whether a product contains unusually high levels of cadmium and arsenic at the point of sale because they are unable to test the product before purchasing it and such testing would require the requisite scientific knowledge and equipment, which is not available to the average consumer. FAC ¶ 29. Additionally, Plaintiff alleged that Defendant knew about the cadmium and arsenic in the Basmati Rice because, by law, Defendant is required to implement controls to significantly minimize or prevent exposure to toxic heavy metals in their products. *Id.* ¶ 31, n. 8 (citing 21 C.F.R. §§ 117.130-35). Plaintiff, therefore, alleged that Defendant must have tested the Basmati Rice for quality control purposes (and/or received Certificates of Analysis from suppliers) which disclosed the levels of toxic heavy metals such as cadmium and arsenic in the Basmati Rice. *Id.* Based on this testing, Plaintiff alleged that Defendant had exclusive knowledge of the unsafe cadmium and arsenic levels. *Id.*

This is enough. *United States v. Lang*, 2007 WL 628048, at *1 (S.D. Cal. Feb. 23, 2007) ("That is, the pleadings need only give fair notice of the pleader's claim or defense so that opposing parties can respond, undertake discovery and prepare for trial."); *Garcia v. Gen. Motors LLC*, No. 118CV01313LJOBAM, 2018 WL 6460196, at *18 (E.D. Cal. Dec. 10, 2018) (holding that a car manufacturer's internal

- 11 -

testing and knowledge regarding the design of the car was enough to establish their "superior knowledge" of the alleged defect). The fact that Plaintiff may not be more specific regarding allegations as to Defendant's knowledge is not fatal at this stage of the litigation. Plaintiffs are not required to plead "facts surrounding alleged acts… to which they [cannot] reasonably be expected to have access." *Concha v. London*, 62 F.3d 1493, 1503 (9th Cir. 1995). As such, "[courts] relax pleading requirements where the relevant facts are known only to the defendant." *Id*.; *see also Rubenstein v. Neiman Marcus Grp. LLC*, 687 F. App'x 564, 568 (9th Cir. 2017) ("Without an opportunity to conduct any discovery, Rubenstein cannot reasonably be expected to have detailed personal knowledge of Neiman Marcus's internal pricing policies or procedures for its Last Call stores."). This particularly true regarding Defendant's knowledge of the heavy metal levels, which even Rule 9 establishes does not have to be pled with any particularity. Fed. R. Civ. Pro. § 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.").

Defendant counters that it is well known that rice is a "leading dietary source of arsenic," therefore the public has knowledge about naturally occurring heavy metals in rice. Again, Defendant misunderstands Plaintiff's Complaint. It is not the mere fact that there are heavy metals in the Basmati Rice, but that Defendant sells a product with *five times* higher levels of heavy metals than its competitors, in harmful levels. This information was not known until the release of the May 14, 2025 Report, which triggered the underlying Complaint. FAC ¶ 11.

Nonetheless, the "exclusive knowledge" requirement does not turn on whether some limited, generalized information regarding the potential risk of some defect may be available to consumers on the internet. *Salas*, 2016 WL 7486600, at *10 citing *Daniel v. Ford Motor Co.*, No. 2:11-02890 WBS EFB, 2016 WL 2899026, at *5 (E.D. Cal. May 18, 2016) ("[T]he ability of a prospective purchaser to find complaints made to the NHTSA on the Internet does not preclude a finding of exclusivity."); *Tait v. BSH Appliances Corp.*, No. SACV 10–00711 DOC, 2011

WL 3941387, *3 (C.D. Cal. 2011) ("[T]he fact that information about consumer complaints may have been available on the internet does not negate a claim for fraudulent omission."). The law does not require consumers to "performed an Internet search before [purchasing rice]." *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1097 (N.D. Cal. 2007). Instead, Plaintiff only has to plead that Defendant has "superior" knowledge of a fact that is not "readily apparent" to consumers. *Salas*, 2016 WL 7486600, at *10. Here, Plaintiff pled just that.

<u>Defendant Actively Concealed Material Facts</u>

In the alternative, Plaintiff also pleads that Defendant concealed material facts to satisfy the "*LiMandri* factors." Defendant argues that Plaintiff's allegations on this matter are conclusory and that mere nondisclosure does not constitute active concealment. Motion at p. 22:10-27. However, again, Defendant ignores important portions of the Complaint.

Plaintiff alleged that Defendant violated both federal Current Good Manufacturing Practices ("cGMP") regulations (FAC ¶ 31), as well as California state disclosure limits (FAC ¶ 30). Here, Plaintiff alleged that Defendant was required by cGMP regulations to "control and test for known or reasonably foreseeable hazards, such as natural toxins." FAC ¶ 31, n.8 (citing 21 C.F.R. §§ 117.130-35). Indeed, federal law requires that Defendant conduct analyses to "identify and evaluate" naturally occurring hazards, including those introduced in raw materials, such as rice.[5] *See* 21 C.F.R. § 117.130(a), (b)(2)(i), (c)(2)(iii). Once identified, such hazards must be controlled, including through appropriate quality control procedures. 21 C.F.R. § 117.135. Additionally, Plaintiff alleged that the amount of cadmium in the Basmati Rice exceeds disclosure levels, at which notice

---

[5] As Defendant concedes in its Motion, "the naturally occurring presence of heavy metals in rice has been well documented for decades." Motion at p. 21:16-26. Accordingly, Defendant concedes this is the exact type of "hazard" that it was mandated to analyze and control according to cGMP regulations.

is required. Cal. Health & Safety Code § 25249.6, FAC ¶ 30, n.5. Accordingly, Plaintiff is not just alleging some "mere" non-disclosure, but Defendant actively concealed information that it was required, by law, to disclose and heavy metal contamination that it was required to monitor and control. This distinguishes this case from those cited by Defendant.

**B.    Plaintiff's UCL Unlawful and Unfair Claims are Sufficiently Pled**

As Defendant recognizes, the UCL has three independent prongs: fraudulent, unlawful, and unfair. Motion at pp. 23:1-24:20. While Plaintiff would agree that the fraudulent prong rises and falls with the duty to disclose, as discussed above, the same is not true of the unlawful and unfair prongs.

As noted in the prior section, Plaintiff specifically alleged that Defendant fails to comply with federal cGMP regulations and the California state reporting limitations. FAC ¶¶ 30-31, n.5, 8; Cal. Health & Safety Code § 25249.6, 21 C.F.R. §§ 117.130-35. These federal cGMP regulations are also incorporated into California state law, through the Sherman Food, Drug, And Cosmetic Law (the "Sherman Law"). Cal. Health & Safety Code § 110105. Thus, a violation of federal cGMP regulations is California's Sherman Law.

Plaintiff, therefore, specifically alleges that Defendant's actions violate federal and state law, in a manner that does not require Plaintiff to prove that there has been some deception or omission. And these regulatory violations can serve as an independent violation of the UCL's unlawful prong. *Cel–Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.* 20 Cal.4th 163, 180 (1999) (For an action based upon an allegedly unlawful business practice, the UCL "borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable.") (quotations omitted). The same is true for the unfair prong. *McKell v. Washington Mut., Inc*., 142 Cal. App. 4th 1457, 1473 (2006) ("A business practice is unfair within the meaning of the UCL if it violates established public policy or if it is immoral, unethical, oppressive or unscrupulous and causes

- 14 -

injury to consumers which outweighs its benefits."). Accordingly, even if Plaintiff's claims under the fraudulent prong of the UCL fail, Plaintiff still has properly pled separate and independent violations of the unlawful and unfair prongs.

### C.   Plaintiff's Implied Warranty Claim is Sufficiently Pled

For similar reasons, Plaintiff's implied warranty claims also should be analyzed independently from Plaintiff's omissions claims. The implied warranty of merchantability does not stem from omissions or misrepresentations, but whether such products would "[p]ass without objection in the trade under the contract description" and "[a]re fit for the ordinary purposes for which such goods are used." Cal. Com. Code § 2314(2)(a), (c). Nonetheless, Defendant's challenge to Plaintiff's implied warranty claims seem to stem entirely from its duty to disclose arguments. Motion at p. 13:15-28. Simply put, such arguments are not relevant here.

Instead, "[c]ourts and legal treatises have recognized that the implied warranty of merchantability embraces a minimum level of safety." *See Underwood v. O'Reilly Auto Parts, Inc*., 699 F. Supp. 3d 1049, 1062 (D. Nev. 2023) citing 3 Anderson U.C.C. § 2-314:77, Content of implied warranty of merchantability — Safety (3d. ed.) ("The element of 'quality' within the implied warranty of 'merchantability' embraces the element of 'safety' for use. Thus, if a product is deemed unsafe due to some defect at the time of sale, there will be a breach of the implied warranty of merchantability."); 26 Am. Jur. 2d 1, Sales: Implied Warranty of Merchantability § 6 (2023) ("Goods are not fit for ordinary purposes when they break or need frequent or extensive repairs early on when used in an ordinary manner; nor, obviously, are they fit for ordinary purposes when they are completely useless and therefore unfit for any purpose."). As noted above, Plaintiff alleges that the Basmati Rice is unsafe, due to the elevated heavy metal levels present in the Product when compared to its competitors and also federal and state guidelines. *See*, *supra*, at section A(1)(i). This is sufficient to state an implied warranty claim. FAC ¶¶ 30-31, n.5, 8; *Boyd*, 762 F. Supp. 3d at 949 *citing Rodriguez*, 703 F. Supp. 3d at

- 15 -

1213 ("The ordinary use of food to be eaten; thus, food that cannot be safely consumed 'lacks even the most basic degree of fitness' for its ordinary use" (quoting *Birdsong*, 590 F.3d at 958) (internal quotation marks omitted)); *In re Lindt & Sprungli (USA), Inc., Dark Chocolate Litig.*, No. 23-CV-1186 (AMD) (JAM), 2024 WL 4107244, at *11 (E.D.N.Y. Sept. 6, 2024) ("The plaintiffs assert that Lindt's chocolate bars 'were not fit for their ordinary use (consumption by consumers) as they include undisclosed levels of Heavy Metals' unsafe for consumption, which is clearly enough at this stage of the litigation.")).

Nonetheless, Plaintiff also alleged that Defendant failed to comply with federal cGMP regulations, which are also incorporated into state law. FAC ¶ 31, n.8; Cal. Health & Safety Code § 110105. Because the cGMP regulation represent minimum safety standards in food, drug and cosmetic production, courts have held that a product manufactured in a manner that was materially non-compliant with cGMPs could give rise to a claim for breach of the implied warranty of merchantability under the Uniform Commercial Code ("UCC") in the same manner as any other manufacturing defect claim. See*, e.g., Blue Cross Blue Shield Ass'n v. GlaxoSmithKline LLC*, 417 F. Supp. 3d 531, 567 (E.D. Pa. 2019). It is axiomatic that a product that is not produced to minimum legal standards does not pass without objection in the trade.

Thus, Defendant's actions represent a breach of the warranty of merchantability for this reason as well.

### D.    Equitable Relief is Proper

Defendants rely on *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020) in support of the mistaken notion that Plaintiff cannot seek equitable restitution where she also seeks a remedy at law. Motion at pp. 25:18-36:13. "Courts in the Ninth Circuit are divided on how exacting a standard *Sonner* imposes on plaintiffs who plead claims for equitable remedies at the pleading stage." *Junhan Jeong v. Nexo Financial LLC*, 2022 WL 174236, at *27 (N.D. Cal. Jan. 19, 2022).

- 16 -

However, most courts have declined to dismiss equitable restitution claims at the pleadings stage, finding it premature to place a burden on plaintiffs to demonstrate an inherent limitation of a legal remedy. *See*, *e.g.*, *Carroll v. Myriad Genetics, Inc.*, 2022 WL 16860013, at *6 (N.D. Cal. Nov. 9, 2022) ("This Court finds the latter approach more persuasive. *Sonner* does not address what a plaintiff must allege at the pleading stage in order to proceed on her equitable claims, nor (based on the law presented by the parties here) does the federal common law *Sonner* directs us to apply. This Court will not deprive plaintiffs of their claims without clearer direction from a higher court."); *Warren v. Whole Foods Mkt. California, Inc.*, 2022 WL 2644103, at *9-10 (N.D. Cal. July 8, 2022) ("[E]ntitlement to seek the equitable remedy of restitution may be revisited at a later stage"); *Johnson v. Trumpet Behavioral Health, LLC*, 2022 WL 74163, at *3 (N.D. Cal. Jan. 7, 2022) ("[B]ecause *Sonner* was decided at a later posture … if a plaintiff pleads that she lacks an adequate legal remedy, *Sonner* will rarely (if ever) require more this early in the case."); *Sagastume v. Psychemedics Corp.*, 2020 WL 8175597, at *7 (C.D. Cal. Nov. 30, 2020) ("*Sonner* does not hold that plaintiffs may not seek alternative remedies at the pleading stage.") (internal citations omitted); *Haas v. Travelex Ins. Servs. Inc.*, 555 F. Supp. 3d 970, 980 (C.D. Cal. 2021) ("[T]he Court is unpersuaded that *Sonner* compels dismissal of this equitable claim at the pleading stage."); *Byton N. Am. Co. v. Breitfeld*, 2020 WL 3802700, at *9 (C.D. Cal. Apr. 28, 2020) ("In the absence of controlling authority on this specific issue, the Court agrees with those courts that allow plaintiffs to plead UCL claims in the alternative, even when other adequate remedies may exist.").

These rulings are consistent with Federal Rule of Civil Procedure 8, which allows plaintiffs to plead a claim for relief "in the alternative or different types of relief." Fed. R. Civ. P. 8(a)(3); *see also Nacarino v. Chobani, LLC*, 2022 WL 344966, at *10 (N.D. Cal. Feb. 4, 2022), *motion to certify appeal denied*, 2022 WL 833328 (N.D. Cal. Mar. 21, 2022) (agreeing with courts that have rejected *Sonner*'s

applicability at the pleadings stage and noting "[t]hese ruling are consistent with Federal Rule of Civil Procedure 8 which allows for pleading in the alternative"); *Byton N. Am. Co.*, 2020 WL 3802700, at *9 ("[T]he Ninth Circuit's general rule is that plaintiffs may plead alternative claims, even if those claims are inconsistent."). The Court should follow these well-reasoned authorities, as Plaintiff should not be denied the opportunity to make this showing that she does not have adequate legal remedies, in the future, should her legal claims prove untenable.

### E.    Nationwide Claims Should not be Dismissed

Defendant also challenges Plaintiff's pleading of a national class. Defendant's principal argument is that there are an insurmountable choice of law issues. However, such challenges are premature, and best left for class certification. *See., e.g., Sultanis v. Champion Petfoods USA Inc.*, No. 21-cv-162-EMC, 2021 WL 3373934, at *6 (N.D. Cal. Aug. 3, 2021) (holding whether a plaintiff can bring claims on behalf of unnamed plaintiffs under the laws of states in which the named plaintiff does not reside or was injured is a matter of typicality, adequacy, and predominance under Rule 23). As courts in this circuit have made clear, "a detailed choice-of-law analysis [is required] at the class certification stage of the case." *Won Kyung Hwang v. Ohso Clean, Inc.*, 2013 WL 1632697, at *21 (N.D. Cal. Apr. 16, 2013) (emphasis added) (citing *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581 (9th Cir. 2012)). Indeed, "the Ninth Circuit's decision in *Mazza* [was] decided at the class certification stage [and] depended heavily on a detailed choice-of-law analysis . . . Such a detailed choice-of-law analysis should occur during the class certification stage, after discovery." *Fehrenbach v. Hewlett Packard Co.,* 2017 WL 11422106, at *5–6 (S.D. Cal. Jan. 5, 2017) (internal quotation marks and citations omitted); *see also Zapata Fonseca v. Goya Foods Inc*., 2016 WL 4698942, at *3–4 (N.D. Cal. Sept. 8, 2016) (declining to undertake a choice of law analysis before adequate discovery).

## CONCLUSION

For these reasons, the Court should deny Defendant's motion to dismiss. In the alternative, Plaintiff requests leave to file an amended complaint to address any such deficiencies.

Respectfully submitted,

DATED: October 10, 2025    **BRYSON HARRIS SUCIU & DEMAY PLLC**

By: */s/ Trenton Kashima*
Trenton Kashima (SBN No. 291405)
**BRYSON HARRIS SUCIU & DEMAY PLLC**
280 S. Beverly Drive, Ste. PH
Beverly Hills, CA 90212
Tel: (619) 810-7047
tkashima@brysonpllc.com