JACOB M. HARPER (State Bar No. 259463)
  jacobharper@dwt.com
JAMES H. MOON (State Bar No. 268215)
  jamesmoon@dwt.com
MICHAEL S. DRELL (State Bar No. 327127)
  michaeldrell@dwt.com
DAVIS WRIGHT TREMAINE LLP
350 South Grand Avenue, 27th Floor
Los Angeles, California 90071
Telephone: (213) 633-6800
Fax: (213) 633-6899

*Attorneys for Defendant*
*The Kroger Co.*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| MARY TOMASSIAN, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>THE KROGER CO.,<br><br>Defendant. | Case No. 2:25-cv-05608-JFW-PVC<br><br>**[PROPOSED] STATEMENT OF DECISION GRANTING DEFENDANT THE KROGER CO.'S MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>Date:      November 3, 2025<br>Time:     1:30 p.m.<br>Location: Courtroom 7A<br><br>Assigned to the Hon. John F. Walter<br>Courtroom 7A<br><br>Complaint Filed: June 20, 2025 |

On September 19, 2025, Defendant The Kroger Co. ("Kroger") filed a Motion to Dismiss First Amended Class Action Complaint ("Motion"). On October 10, 2025, Plaintiff Mary Tomassian ("Plaintiff") filed her Opposition. On October 24, 2025, Kroger filed a Reply. The matter was heard on November 3, 2025. After considering the moving, opposing, and reply papers, and the arguments therein and presented at the hearing, the Court grants Kroger's Motion and dismisses Plaintiff's claims with prejudice.

## I. BACKGROUND

### A. Factual Background

Plaintiff is a consumer who, between 2020 and March, 2025, purchased Kroger Basmati Rice ("Rice") from Kroger's Ralphs grocery stores near Woodland Hills, California. A third-party organization, Healthy Babies Bright Futures, commissioned independent lab testing of a sample of the Rice sourced from Maumelle, Arkansas and found that the sample contained, as relevant here, 81.1 parts per billion of inorganic arsenic and 108 parts per billion of cadmium (the "Heavy Metals"). Arsenic and cadmium are naturally-occurring heavy metals that can cause health problems in humans when ingested in certain quantities. These results, alongside results from 144 other samples of store-bought rice, were published in a May 14, 2025 report (the "Report").

Plaintiff does not allege that the packaging of the Rice includes any statement relating to Heavy Metals; Plaintiff alleges she would not have purchased or consumed the Rice, or would have paid less for it, if she knew the Rice contained Heavy Metals, and that Kroger's failure to disclose the potential presence of Heavy Metals "misleadingly causes consumers to believe" that the Rice "does not contain Heavy Metals," when the Rice, in fact, "contains or has a material risk of containing undisclosed levels of Heavy Metals, which is material information to reasonable consumers and Plaintiff." Plaintiff therefore brings this action individually and on behalf of a putative class of nationwide and California consumers.

### B. Procedural Background

On June 20, 2025, Plaintiff filed her Complaint, bringing claims for relief for: (1) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq*; (2) violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, *et seq*; (3) violation of California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq*; (4) Breach of Implied Warranty of Merchantability; and (5) Unjust Enrichment. On August 15, 2025, the parties stipulated to Plaintiff filing an amended complaint. ECF No. 14. The Court approved that stipulation on August 18, 2025 (ECF No. 18), and Plaintiff filed her First Amended Complaint ("FAC") on August 29, 2025 (ECF No. 19), bringing identical claims for relief as her initial Complaint.

## II. LEGAL STANDARDS

### A. Request for Judicial Notice

Though "[g]enerally[] district courts may not consider material outside the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6) . . . [t]here are two exceptions to this rule: the incorporation-by-reference doctrine, and judicial notice under Federal Rule of Evidence 201." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018). "[I]ncorporation-by-reference is a judicially created doctrine that treats certain documents as though they are part of the complaint itself" in order to "prevent[] plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims." *Id.* at 1002 (citation omitted). This doctrine permits a court to "consider a writing referenced in a complaint but not explicitly incorporated therein, if the complaint relies on the document and its authenticity is unquestioned." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007).

### B. Motion to Dismiss

A motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. Dismissal is proper "where there is either a 'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Summit Tech., Inc. v. High-Line Med. Instruments Co., Inc.*, 922 F. Supp. 299, 304 (C.D. Cal. 1996) (quoting *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted).

Rule 9(b) provides: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." The heightened pleading requirements of Rule 9(b) are designed "to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir. 1993). In order to provide this required notice, "the complaint must specify such facts as the times, dates, places, and benefits received, and other details of the alleged fraudulent activity." *Id.* at 672.

### III. DISCUSSION

### A. Kroger's Request for Judicial Notice

Kroger filed an unopposed Request for Judicial Notice (ECF No. 22-3), requesting that the Court take judicial notice of the Report. The Court finds that the Report is relied upon and incorporated in the FAC, and the Court therefore **GRANTS** Kroger's Request for Judicial Notice. See *Khoja*, 899 F.3d at 100.

### B. The FAC Does Not Plead a Fraudulent Omission

Claims for violation of the UCL, FAL, and CLRA must satisfy the "reasonable consumer test," which requires a plaintiff to allege facts showing consumers "are likely to be deceived." *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016). As the same standard governs claims under these three statutes, Courts routinely consider the statutes together. *See In re Plum Baby Food Litig.*, 2024 WL 1354447, at *4, 9 (N.D. Cal. Mar. 28, 2024), *aff'd* 2025 WL 1200700 (9th Cir. Apr. 25, 2025) (dismissing UCL, FAL, CLRA, and unjust enrichment claims based on failure to meet reasonable consumer test based on omission theory). Plaintiff's other claims based on implied warranty and unjust enrichment, also rise and fall based on the same test (and the additional reasons stated below). *See Eidmann v. Walgreen Co.*, 522 F. Supp. 3d 634, 643 (N.D. Cal. 2021) (where plaintiff's claims are based on theory of misleading packaging and marketing, "all of his claims must 'rise or fall together'" as part of a "unified theory" (citations omitted)); *Lopez v. Mead Johnson Nutrition Co.*, 2025 WL 895213, at *7–8 (N.D. Cal. Mar. 24, 2025) (implied warranty of merchantability claim fell with UCL, CLRA, and FAL claims for failure to plead duty to disclose).

The FAC alleges only omissions and not affirmative misrepresentations. ECF No. 21 at 4. For "an omission theory of consumer fraud" "to be actionable[,] the omission must be contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obligated to disclose." *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 861 (9th Cir. 2018) (quoting *Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 835 (2006)).

Where a plaintiff's claims sound in fraud, the pleadings must comply with Fed. R. Civ. P. Rule 9(b). *Cortez v. Handi-Craft Co., Inc.*, 2025 WL 1452561, at *2 (N.D. Cal. Apr. 29, 2025) (collecting authority). This is particularly true where a complaint "alleges a unified course of fraudulent conduct," as the "entire complaint must therefore be pleaded with particularity." *Kearns v. Ford Motor Co.*, 567 F.3d

5

1120, 1126–27 (9th Cir. 2009). As the FAC's claims are grounded in fraud, *see id.*, the FAC must satisfy Rule 9(b) and "identify the who, what, when, where, and how of the misconduct charged." *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1019 (9th Cir. 2020).

### 1. Plaintiff Does Not Plead an Unreasonable Safety Hazard

The first avenue by which a plaintiff may claim that a defendant is obligated to disclose information about a product is by alleging that "the defect at issue relates to an unreasonable safety hazard." *Hammerling v. Google*, 615 F. Supp. 3d 1067, 1085 (N.D. Cal. 2022). "[A] party's allegations of an unreasonable safety hazard must describe more than merely 'conjectural and hypothetical' injuries.'" *Williams v. Yamaha Motor Co. Ltd.*, 851 F.3d 1015, 1028 (9th Cir. 2017) (quoting *Birdsong v. Apple*, 590 F.3d 955, 961 (9th Cir. 2009)). "In cases that involve hazardous substances, courts have required plaintiffs to allege a connection between (1) the levels at which those substances are unsafe, and that (2) the defendant's product contains those unsafe levels." *Cortez*, 2025 WL 1452561, at *4 (collecting cases).

Kroger argues that Plaintiff does not allege that the Rice presents an unreasonable safety hazard because Plaintiff does not link the levels of heavy metals in the Rice to a specific amount showing human harm. Plaintiff argues that she has set forth the harms result from consumption of heavy metals in any amount, that heavy metals "bioaccumulate" in the body, and that the Rice surpasses allowable limits in other consumables. Plaintiff also argues that the determination of an unreasonable safety hazard is inappropriate on a motion to dismiss. Kroger's Reply counters that the majority of courts require identification of some concrete threshold for harm to survive a motion to dismiss, that Plaintiff's theories of bioaccumulation and "no safe level" are impermissible, and that none of Plaintiff's identified standards are applicable to rice or indicative of harm to human health.

While the FAC is replete with allegations regarding the dangers of Heavy Metals in general, what it does not include is any information describing the *amount*

of Heavy Metals that must be consumed to result in injury such that there is a clear threshold past which these devastating effects will occur—much less any indication that the level of Heavy Metals *in the Rice* crosses these dangerous thresholds. The FAC's generalized allegations of harm fail to provide the Court with any specificity as to *when* such a safety hazard accrues; the Court can only surmise as to whether the amount of Heavy Metal in the Rice was unreasonably hazardous. *See, e.g., id.* at *5 (no unreasonable safety hazard where "[t]he Court [wa]s therefore left to guess" whether "the amount of microplastics that are released by defendant's Products," resulted in "negative health effects" and therefore "whether that amount is unreasonable."); *In re Theos Dark Chocolate Litig.*, 750 F. Supp. 3d 1069, 1090 (N.D. Cal. 2024) ("Plaintiffs do not plead that the amounts of Heavy Metals that occur *in Theo's Products* have caused harm or create an unreasonable safety hazard" (citing *Hammerling*, 615 F. Supp. 3d at 1086)); *In re Trader Joe's Co. Dark Chocolate Litig.*, 726 F. Supp. 3d 1150, 1170–71 (S.D. Cal. Mar. 27, 2024) ("[T]here is a disconnect . . . between Plaintiffs' allegations about the potential harms posed by Heavy Metals as a general matter and whether these Heavy Metals are unreasonably hazardous at the particular levels in the specific Products at issue. . . . alleging that Heavy Metals can pose human health risks at some unidentified level does not mean the levels in these Products pose a human health risk, particularly not one great enough to constitute an unreasonable safety hazard").

The Complaint's attempt to loosely tie the level of Heavy Metals in the Rice to the alleged harms by referencing "maximum allowable dose levels" ("MADLs"), a standard set by California's Proposition 65 ("Prop 65"), is unavailing. "[C]admium is] the subject of [Prop 65]." *Grausz v. Hershey Co.*, 691 F. Supp. 3d 1178, 1190 (S.D. Cal. 2023) ("*Grausz I*") (citations omitted); Cal. Health & Safety Code § 25249.6. Prop 65 sets MADLs at levels *significantly* lower than levels at which exposure to the chemical at issue would have an observable effect, let alone cause harm, and thus MADLs do not indicate an unreasonable safety hazard. *See*

7

*Hayden v. Bob's Red Mill Nat. Foods, Inc.*, 2024 WL 1643696, at *8 (N.D. Cal. Apr. 16, 2024) ("Plaintiff's own sources indicate that '[e]xposure at a level *1,000 times greater than the MADL* is expected to *have no observable effect*.'" (citation omitted)). Reliance on Prop 65's levels mandating warnings does not rescue Plaintiff's claims for the same reason that Plaintiff's claim fails more generally: Prop 65's MADLs, without more, are not directly linked to harm in humans and therefore cannot support allegations that a product is an unreasonable safety hazard. *See id.*, at *8–9 (no unreasonable safety hazard where cadmium levels exceeded MADLs because "Plaintiff has not plausibly alleged that Proposition 65 MADLs 'indicate the thresholds at which a particular substance poses a danger to human health.'" (internal citations omitted)); *Grausz I*, 691 F. Supp. 3d at 1195 (granting motion to dismiss where heavy metal levels allegedly surpassed MADLs as "MADLs are not cutoffs indicating the point where lead or cadmium content becomes a health risk"); *Grausz v. Hershey Co.*, 713 F. Supp. 3d 818, 827–28 (S.D. Cal. 2024) ("*Grausz II*") (dismissing successive complaint for continued reliance on MADLs for allegation of unreasonable safety hazard and failure "to plead 'whether the trace amounts *at issue here* are actually enough to cause the health effects that Plaintiff . . . reiterates in the [amended complaint].'" (internal citation omitted)); *see also Lopez v. Mead Johnson Nutrition Co.*, 2025 WL 895213, at *7–8 (N.D. Cal. Mar. 24, 2025) (no unreasonable safety hazard where "Plaintiff has not plausibly alleged that the EPA and FDA's allowable limits 'indicate the thresholds at which [] particular substance[s] pose[] a danger to human health.'" (quoting *Hayden,* 2024 WL 1643696, at *9 and collecting cases)).

Plaintiff's theory that *any* amount of exposure to naturally-occurring Heavy Metals is unreasonably unsafe and requires disclosure, whether in a single instance or under a theory of "accumulation over time," would impermissibly expand the duty to disclose by requiring disclosure of *any* possible safety hazard. *See In re Plum*, 2024 WL 1354447, at *5 ("the theory that regular consumption of

defendant's Baby Food over a period of time may lead to potentially dangerous accumulations of these chemicals is simply too conjectural" (citations omitted)); *Cortez*, 2025 WL 1452561, at *5 ("Insofar as plaintiffs suggest that *no amount* of microplastic exposure can be safe, such an expansive theory of harm would impermissibly broaden the duty to disclose to any *potential*—and not just unreasonable—safety hazard." (citations omitted)); accord *Krystofiak v. BellRing Brands, Inc.*, 737 F. Supp. 3d 782, 801 (N.D. Cal. 2024) ("As an example, using the World Health Organization's declaration that there is no safe lead level as a reference is too conclusory and would render FDA guidance moot in all circumstances, rendering literally *any* alleged level of lead actionable."); *In re Pac. Mkt. Int'l, LLC Stanley Tumbler Litig.*, 764 F. Supp. 3d 1026, 1039 (W.D. Wash. 2025) ("allowing these allegations to survive a motion to dismiss would green-light all kinds of lawsuits based merely on the presence of a material that, *in some unspecific amount*, could be harmful." (citation omitted)).  Plaintiff further provides no explanation or persuasive authority for her theory that levels of Heavy Metals can be unreasonably unsafe based solely on a comparison to levels in other products that they have not established are dangerous.

Plaintiff has therefore failed to plead a duty to disclose on the basis that the Rice is an unreasonable safety hazard.

### 2. **Plaintiff Does Not Plead Materiality, Centrality to Function, or Any *LiMandri* Factor**

A plaintiff can alternatively make out an omission claim by alleging (a) "that the defect was central to the product's function;" (b) that Kroger's "omission was material;" and (c) "one of the four *LiMandri* factors." *Hodsdon*, 891 F.3d at 863. Each prong must be alleged to sufficiently state a claim for fraudulent omission.

#### (a) Centrality to Function

To establish that a purported defect is central to a product's function, a plaintiff must plead that the defect "renders th[e] products incapable of use by any

consumer." *Hodsdon*, 891 F.3d at 864. When considering allegations a defect in a food product, courts frequently consider whether plaintiffs have "plausibly pled that [the food] containing trace amounts of Heavy Metals cease to function as food – or ceases to provide any nutritional value." *In re Theos*, 750 F. Supp. 3d at 1090 (citations omitted). Plaintiff concedes that she does not allege this required prong (ECF No. 26 at 3 n.2), which entirely disposes of the issue. *See Hayden*, 2024 WL 1643696, at *10 (no duty to disclose if centrality to function not alleged).

### (b) Materiality

The other prongs of the test support Kroger's position. "[A] fact is deemed 'material,' . . . if a 'reasonable [consumer]' would deem it important in determining how to act in the transaction at issue." *Collins v. eMachines, Inc.*, 202 Cal. App. 4th 249, 256 (2011). Kroger claims that the failure to connect the reported levels of Heavy Metals in the Rice to a threshold for actual harm dooms any claim of materiality. The Court agrees. The Complaint's allegations concerning materiality are conclusory, as without any allegations linking the level of Heavy Metals to a level determined to cause actual harm, these allegations of materiality simply beg the question of *why* such information would be material. *See Lassen v. Nissan N. Am., Inc.*, 211 F. Supp. 3d 1267, 1286 (C.D. Cal. 2016) ("Where a plaintiff's claim is that the material fact that the seller had a duty [to] disclose is a defect, materiality requires that the defect pose a safety concern." (citing *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1141–42 (9th Cir. 2012))); *accord In re Pac. Mkt.*, 764 F. Supp. 3d at 1039. As discussed above, Plaintiff has not identified any limit on the amount of naturally-occurring heavy metal in rice connected to harm, danger, or a safety hazard. Plaintiff also provides no authority to support her claim that the alleged levels of Heavy Metals in the Rice are material because they are "higher" than those in competitor products, and indeed she provides little argument on the point.

### (c) *LiMandri* Factors

The four *LiMandri* factors include "when the defendant (1) is the plaintiff's fiduciary; (2) has exclusive knowledge of material facts not known or reasonably accessible to the plaintiff; (3) actively conceals a material fact from the plaintiff; and (4) makes partial representations that are misleading because some other material fact has not been disclosed." *In re Plum*, 2024 WL 1354447, at *4 (citations omitted). Pleading at least one factor is necessary to adequately allege a duty to disclose. The parties agree only two factors are at issue: exclusive knowledge and active concealment.

*Exclusive Knowledge.* Kroger persuasively argues that it did not have exclusive knowledge of heavy metals in the Rice because the Report upon which the FAC relies notes that information about the presence of trace amounts of naturally-occurring heavy metals in rice has been available to the public for decades. Other courts have observed that a "Plaintiff's allegations concerning Defendant's supposedly exclusive knowledge of cadmium are implausible in light of the publicly accessible nature of [relied-upon] testing." *Hayden*, 2024 WL 1643696, at *10; *see also In re Plum*, 2024 WL 1354447, at *5–6 ("The public availability of this information undermines plaintiffs' arguments that their allegations are sufficient to support defendant's exclusive knowledge and that plaintiffs had no reason to know of these facts."); *Lopez*, 2025 WL 895213, at *9 ("Plaintiff's allegation that Defendants had 'exclusive knowledge of material facts' is contradicted by the public availability of '[i]ndependent testing also confirm[ing] Heavy Metals' in two of Defendants' products." (cleaned up)). Plaintiff fails to meaningfully address that the Report discloses this information, arguing only that she could not have known prior to publication of the Report about *comparative* levels of Heavy Metals—but, as noted, she provides no authority supporting a comparative analysis and provides no allegations, factual or otherwise, indicating that Kroger tests its competitors' rice for Heavy Metals. Kroger therefore could not

11

have had exclusive knowledge because the information was widely available to the public, including via the Report itself, and has been for decades.

*Active Concealment*. Kroger contends that Plaintiff fails to plead this *LiMandri* factor because the FAC's accusation of nondisclosure is not equivalent to active concealment, while Plaintiff argues that her allegations that Kroger violated a collection of federal and state statutes indicates active concealment. Plaintiff fails to point to specific allegations, including factual allegations, in the FAC to substantiate that Kroger actively concealed information. "Mere nondisclosure does not constitute active concealment." *Czuchaj v. Conair Corp.*, 2014 WL 1664235, at *6 (S.D. Cal. April 18, 2014) (citations omitted); *cf.*, *e.g.*, FAC ¶ 74 ("Defendant chose not to disclose such information to consumers and thus actively concealed the presence and risk of Heavy Metals in the [Rice].").  These allegations, alongside a smattering of other non-specific claims in the FAC, are entirely conclusory and inadequate to show any "active concealment" by Kroger, and Kroger cannot be deemed to have actively concealed any information from Plaintiff. *See Lopez*, 2025 WL 895213, at *9 (unexplained, conclusory allegations of active concealment inadequate to plead *LiMandri* factor).

The FAC therefore does not plead any of the requisite *LiMandri* factors to sustain its fraudulent omission claims, and the FAC has entirely failed to adequately plead a duty to disclose or a fraudulent omission under any theory.

### C. The FAC Does Not Plead Any Viable Claim.

All of Plaintiff's claims—based on the same uniform theory of fraudulent omissions—fail as explained above. Plaintiff's claims that the implied warranty and unjust enrichment claims are different fail as explained below. Plaintiff's UCL claim also fails for additional reasons.

#### 1. Implied Warranty Claim

The Opposition argues that Ms. Tomassian's claim for breach of the implied warranty of merchantability is sufficiently pleaded because she alleges that the

levels of Heavy Metals in the Rice make the Rice unsafe to consume and that the Rice violated federal law. In Reply, Kroger argues that the Rice is not, in fact, unsafe because Ms. Tomassian failed to adequately plead an unreasonable safety hazard and she alleged she consumed the Rice for years without injury. It is unclear how the Rice could be entirely unsafe to consume when Plaintiff herself consumed the Rice for many years and does not complain of physical injury or harm—"bioaccumulated" or otherwise. And, as discussed above, she fails to allege any violation of federal statute, whether explicitly or by implication.

### 2. Unjust Enrichment Claim

As pointed out by Kroger's Reply, the Opposition claims to dispute that Ms. Tomassian's unjust enrichment claim falls with her fraudulent omission theory but neglects to provide any additional argument on the point. This failure alone is sufficient to dismiss the claim. *See, e.g., Kroeger v. Vertex Aerospace LLC*, 2020 WL 3546086, at *8 (C.D. Cal. June 30, 2020).

### 3. Plaintiff's Remaining UCL Claims

The Opposition contends that Plaintiff's "unlawful" and "unfair" UCL claims are adequately pleaded because she alleges violations of state and federal regulations and these violations support both unlawful and unfair UCL claims. The Reply argues that the Opposition points to statutes not actually cited by the FAC and that the FAC does not actually allege violations of any of the cited statutes. But the FAC does not specifically cite to the statutes identified by the Opposition—a fatal defect because "Plaintiff has failed to identify the specific section(s) [of the Sherman Law] that were violated by Defendant's conduct," *Mencia-Montes v. Fit Foods Distrib., Inc.*, 2025 WL 1185372, at *6 (N.D. Cal. Mar. 31, 2025), and "[i]n determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss." *Cosimano v. Valli*, 2023 WL 9318993, at *2 (C.D. Cal. Nov. 15, 2023) (citation omitted). Plaintiff does not purport to bring a

13

claim for violation of Prop 65, and she "'cannot evade the requirement of pre-suit 60 day notice in Proposition 65 by repleading [her] cause of action' as a violation of a consumer protection statute." *Sciortino v. Pepsico, Inc.*, 108 F. Supp. 3d 780, 792–93 (N.D. Cal. 2015) (citations omitted).  The FAC also does not *actually* allege violations of the statutes it identifies, at most *implying* a violation but not directly so alleging.  And this implication likewise fails, because Plaintiff never explains *to what level Kroger was required to control the Heavy Metals*.  As noted, there is *no* applicable legal limit on the amount of Heavy Metals in Rice.

### D. The FAC Does Not Demonstrate the Relief Sought is Proper

#### 1. Punitive Damages

The FAC's prayer for relief seeks punitive damages.  In its Motion, Kroger claims that punitive damages are impermissible without specific allegations that an officer, director, or managing agent of a corporate defendant authorized or ratified malicious, fraudulent, or oppressive conduct, and that the FAC fails to identify any individual agent or describe how that individual authorized or ratified the conduct at issue.  Plaintiff's Opposition does not address this argument at all, therefore conceding it.  *See id.*

#### 2. Equitable Relief

The Motion challenges Plaintiff's claim to equitable relief, arguing that Plaintiff has failed to establish a lack of adequate remedy at law.  Plaintiff cites a number of district court cases that apparently disagree with the Ninth Circuit and permit equitable claims to proceed.  Kroger's Reply argues that these cases disregard their obligation to follow controlling Ninth Circuit authority.

The Ninth Circuit held in *Sonner v. Premier Nutrition Corporation*, 971 F.3d 834, 844 (9th Cir. 2020), that a plaintiff "must establish that she lacks an adequate remedy at law before securing equitable restitution for past harm under the UCL and CLRA."  District courts have extended this requirement to apply to FAL claims. *See, e.g., Robie v. Trader Joe's Co.*, 2021 WL 2548960, at *6 (N.D. Cal.

June 14, 2021). "Since *Sonner*, courts in this circuit have held that a plaintiff facing dismissal 'must, at a minimum, *plead* that she lacks adequate remedies at law if she seeks equitable relief.'" *Lair v. Bank of Am., N.A.*, 2024 WL 943945, at *6 (C.D. Cal. Jan. 26, 2024) (quoting *Guthrie v. Transamerica Life Ins. Co.*, 561 F. Supp. 3d 869, 875 (N.D. Cal. 2021)); *see also Franckowiak v. Scenario Cockram USA, Inc.*, 2020 WL 9071697, at *3 (C.D. Cal. Nov. 30, 2020). "[P]laintiffs must include in the complaint 'substantive allegations that they lack an adequate legal remedy,'" which "involves 'explain[ing] why money damages are not an adequate remedy.'" *Lair*, 2024 WL 943945, at *6 (quoting *In re ZF-TRW Airbag Control Units Prod. Liab. Litig.*, 601 F. Supp. 3d 625, 769 (C.D. Cal. 2022)). Claiming equitable relief in the alternative is permissible but still requires that a plaintiff plead that she lacks an adequate remedy at law. *See Guthrie*, 561 F. Supp. 3d at 875.

The FAC does not contain a single allegation concerning the adequacy of Plaintiff's remedies at law to support claims for equitable relief. The Court declines the invitation to openly disregard on-point and binding Ninth Circuit authority.

### 3. Nationwide Class Claims

The Motion contests Plaintiff's ability to assert claims on behalf of a nationwide class are based on California consumer protection laws. Plaintiff asserts that a decision on nationwide class claims is better made during class certification. Kroger argues that Plaintiff does not directly address Kroger's contentions from the Motion and fails to explain why her the claims should not be dismissed.

"A court may strike class allegations before a motion for class certification if 'the matter is sufficiently obvious from the pleadings.'" *Kramer v. Wilson Sporting Goods Co.*, 2013 WL 12133670, at *4 (C.D. Cal. Dec. 13, 2013) (citing *Route v. Meade*, 2013 WL 658251, at *8 (C.D. Cal. Feb. 21, 2013)). In *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589–94 (9th Cir. 2012), *overruled on other grounds by Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir. 2022), the Ninth Circuit decertified a nationwide class as "each class member's

consumer protection claim should be governed by the consumer protection laws of the jurisdiction in which the transaction took place." *See also Glenn v. Hyundai Motor Am.*, 2016 WL 3621280, at *4, *10, *13 n.9 (C.D. Cal. June 24, 2016) (applying *Mazza* and granting motion to dismiss); *Vinci v. Hyundai Motor Am.*, 2018 WL 6136828, at *5 (C.D. Cal. Apr. 10, 2018) (*Mazza* "applies generally and is instructive when addressing a motion to dismiss, as many courts have recognized") (collecting cases).

The FAC attempts to apply California consumer protection laws to out-of-state class members without a sufficient nexus to California, and Plaintiff presents no convincing argument—if any—that California's laws should apply extraterritorially or that Court should delay decision on a "matter sufficiently obvious from the pleadings." *Route*, 2013 WL 658251, at *8.

### IV. CONCLUSION

For the reasons set forth above, the FAC fails to adequately plead a fraudulent omission claim. Additionally, Plaintiff does not adequately plead her entitlement to punitive damages, equitable relief, or maintain nationwide class claims. The Motion is therefore **GRANTED** in its entirety.

While the Ninth Circuit generally maintains a liberal policy favoring the ability of a plaintiff to amend and the grant of leave to amend, leave to amend is not required where the Court determines that amendment would be futile. *See Valdez v. United Airlines*, 2023 WL 4295094, at *2 (C.D. Cal. June 23, 2023) (citing *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987)). Plaintiff already amended with full knowledge of Kroger's arguments. And Plaintiff's Opposition makes clear that she is unable to allege any additional facts that would remedy the deficiencies in the FAC. Accordingly, as amendment would be futile, the Court denies Plaintiff leave to amend and the FAC is **DISMISSED with prejudice**.